455 S.E.2d 516

STATE of West Virginia, Plaintiff
Below, Appellee,

v.

Lyle B. McGINNIS, Jr., Defendant
Below, Appellant.

No. 22031.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 20, 1994.

Decided Dec. 8, 1994.

Jacquelyn I. Custer, Sr. Asst. Atty. Gen., Charleston, for appellee.

John J. Polak, Philip J. Combs, King, Allen & Arnold, Charleston, Frank W. Helvey, Jr., Appellate Public Defender, Charleston, for appellant.

CLECKLEY, Justice:

The appellant and defendant below, Lyle B. McGinnis, Jr., was convicted in the Circuit Court of Cabell County of murder in the first degree with a recommendation of mercy. The defendant appeals from the guilty verdict. The defendant asserts twelve assignments of error. Because we find no error or merit in the remaining assignments of error, we limit our review to the admission of evidence of uncharged misconduct under Rule 404(b) of the West Virginia Rules of Evidence.[1]

## I.

Shortly after 5:00 p.m. on Wednesday, November 29, 1989, the body of Kathy McGinnis, the defendant's wife, was discovered behind the Gateway Plaza Shopping Center in St. Albans, West Virginia. An opaque plastic bag was secured around the neck of Mrs. McGinnis by a single strand of telephone wire. The murder investigation indicated that acrylic fingernails broken at the time of the murder suggested that the victim was murdered in the bedroom of her home. Dr. Irvin Sopher, the State Medical Examiner,

---

1. The defendant's brief lists twelve assignments of error. He contends that the trial court erred: (1) in allowing him to be tried even though he was never lawfully indicted; (2) in refusing to recuse the prosecuting attorney; (3) in permitting improper closing argument by the prosecutor; (4) in permitting the admission of evidence of uncharged misconduct; (5) in permitting the prosecution's inquiry into the defendant's pretrial silence; (6) in admitting prejudicial hearsay evidence; (7) in violating the defendant's attorney-client privilege; (8) in allowing the State to fail to comply with Rule 26.2 of the West Virginia Rules of Criminal Procedure; (9) in allowing the defendant to be impermissibly identified through a single photographic array; (10) in refusing to allow the victim's family to offer opinion evidence on the ultimate issue; and (11) in allowing the defendant's confrontation clause rights to be violated. The defendant's final assignment of error alleges that the cumulative effect of the errors mandates reversal of his conviction.

testified that Mrs. McGinnis had been murdered ten to twelve hours earlier, but her body had been at the Gateway Plaza location for less than ten minutes when found. The death certificate noted that Mrs. McGinnis died as a result of ligature strangulation. However, Dr. Sopher testified that he could not rule out that the plastic bag contributed to her death.

The victim's body was not identified until the following morning by Sharon Peoples, a family friend. Mrs. McGinnis and her husband had been reported missing the previous night by Ami McGinnis, their daughter, after she was unable to locate her parents. On November 29, 1989, Ami and her boyfriend, Lenny Rosanoff, went to the McGinnis home and discovered that the house was locked and in good order, except that the family dog was left unattended. Later in the evening, Ami returned to the house and was still unable to locate her parents. She then called Sharon Peoples and Pat Bouillet, who were friends of Mrs. McGinnis. Ms. Peoples and Ms. Bouillet went over to the McGinnis house. They observed that there were no signs of a struggle. However, Mrs. McGinnis's purse was found at the home on the kitchen floor. At the time of these events, no one knew the whereabouts or fate of Lyle B. McGinnis, Jr.

On November 30, the same day Mrs. McGinnis's body was identified, the defendant was discovered beside his wrecked jeep in Carter County, Kentucky. The jeep had plummeted down a steep roadside embankment. When the defendant was discovered, the defendant asked for the police, claiming that he and his wife had been kidnapped. A telephone cord was wrapped around the defendant's neck, wrist, and ankles, and a similar cord was removed from his pants pocket. The cord from his pocket was forensically matched to the telephone wire that was found around his wife's neck. The defendant was taken to King's Daughters' Hospital in Ashland, Kentucky. Upon discovery of the defendant's whereabouts, Jim Wise, an agent for the Federal Bureau of Investigation (FBI), went to King's Daughters' Hospital.

Agent Wise interviewed the defendant after first asking emergency room physicians whether the defendant was able to communicate. Agent Wise identified himself as an FBI agent to the defendant.

After asking about his wife, the defendant related the following to Agent Wise. Shortly after midnight on Tuesday, November 28, 1989, Mrs. McGinnis answered the telephone and told Mr. McGinnis that someone was coming by for a late delivery. When he answered the door, three white males supposedly forced their way inside and subdued him and Mrs. McGinnis.[2] Mr. McGinnis then said that he was bound up and put into his jeep with two of his abductors, was forced to ingest a white powdery substance, and lost consciousness. When he awoke the following morning, Mr. McGinnis claimed that he found himself in a barn-like structure with his abductors. The kidnappers then tortured the defendant by burning him several times with a heated key and cutting clumps of hair from his head. They also demanded that the defendant perform unspecified criminal acts. Later that day, Mr. McGinnis claimed that he was taken to the country, tied to the jeep's front seat, and something was placed on the gas pedal of the jeep.

After listening to the defendant's version of the events, Agent Wise attempted to elicit more information from the defendant on the three supposed kidnappers. The defendant claimed that he did not know who the kidnappers were, but he did provide a description. The various law enforcement entities involved in this case continued to investigate the murder of Kathy McGinnis and the reported kidnapping of the defendant. Three men matching the descriptions the defendant had given the police were investigated. When it was determined that these men had alibis for the periods in question, the defendant became the prime suspect in his wife's murder. The police and the FBI questioned various witnesses who stated that they had seen a Jeep Wagoneer similar to the defendant's or had interacted with someone fitting

2. The defendant told authorities that part of the struggle took place in the front hall of his house. However, various State witnesses testified that the Christmas tree and packages in the front hall of the McGinnis house looked undisturbed after the supposed attack took place. Furthermore, the witnesses testified that there appeared to be no signs of struggle anywhere else in the house.

the defendant's description in Kentucky. One witness even testified that she had seen a Jeep Wagoneer that looked like the defendant's behind the Gateway Shopping Plaza shortly before the victim's body was discovered. All the witnesses stated that they never saw another individual with the defendant.

On February 22, 1990, grand jury proceedings were conducted in Cabell County. The State presented evidence on the murder of Kathy McGinnis and on the defendant's alleged embezzlement from the Nighbert Land Company from January, 1987, to June, 1989. The grand jury returned an indictment charging the defendant with embezzlement and with first degree murder. A warrant for the defendant's arrest was issued and executed the same day.[3]

On March 16, 1990, the trial court held a hearing to consider certain pretrial motions. One of the defense motions made during this hearing was a motion for election or severance of the murder and embezzlement charges. The State did not object to the severance as long as the State was allowed to determine the order in which the counts would be tried. The trial court then granted the motion to sever the charges. The State ultimately elected to pursue the embezzlement charges first.

The trial for the murder of Kathy McGinnis began on Tuesday, July 31, 1990, and concluded on Saturday, August 18, 1990. After three weeks of evidence, the jury found the defendant guilty of murder in the first degree and recommended mercy. The defendant appeals this conviction.

## II.

The defendant contends that the admission and use of evidence under Rule 404(b) of the West Virginia Rules of Evidence[4] were both excessive and abusive. Because we reverse this conviction, we find it is helpful to discuss at length the parameters of Rule 404(b) in order to provide circuit courts with future guidance. We cannot escape the fact that Rule 404(b) determinations are among the most frequently appealed of all evidentiary rulings, and the erroneous admission of evidence of other acts is one of the largest causes of reversal of criminal convictions. See Imwinkelried, *Uncharged Misconduct Evidence* § 1:04 at 8 (1984).[5] It is equally inescapable that where a trial court erroneously admits Rule 404(b) evidence, prejudicial error is likely to result. See *Government of Virgin Islands v. Toto*, 529 F.2d 278, 283 (3rd Cir.1976) (Rule 404(b) evidence was wrongfully admitted and "[a] drop of ink cannot be removed from a glass of milk"); *United States v. Sanders*, 964 F.2d 295, 299 (4th Cir.1992) (Rule 404(b) evidence wrongly admitted "obviously has the capacity to tip the balance" in the jury's deliberations); *State v. Dolin*, 176 W.Va. 688, 692, 347 S.E.2d 208, 212–13 (1986) ("the admission of collateral crime evidence is highly prejudicial"), *overruled on other grounds, State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990); *State v. Simmons*, 175 W.Va. 656, 658, 337 S.E.2d 314, 316 (1985) ("[t]he improper admission of evidence relating to collateral crimes has generally been held to constitute reversible error").

Rule 404(b) begins by restating the exclusionary principle of Rule 404(a) that evidence of crimes, wrongs, or acts is inadmissible to prove that a person acted in

---

3. In addition to these charges, in February of 1990, Lyle B. McGinnis, Jr., waived his right to a trial and pleaded guilty in federal court to six different charges of mail fraud involving between five and six million dollars. He was sentenced to a total of five years in jail.

4. Rule 404(b) states:
 *"Other Crimes, Wrongs, or Acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity,

intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

5. Evidence of other vices and crimes is excluded not because of its inherent lack of probative value, but rather as a precaution against inciting undue prejudice and permitting the introduction of pointless collateral issues and, until recently, forcing the defendant to defend against charges for which there is usually no fair notice. See I Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 4–5(A) at 325 (3rd Ed.1994).

conformity therewith on a particular occasion. The second sentence of Rule 404(b), however, expressly permits the introduction of specific acts in the nature of crimes, wrongs, or acts to prove purposes other than character, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Thus, Rule 404(b) permits the introduction of specific crimes, wrongs, or acts for "other purposes" when character is not, at least overtly, a link in the logical chain of proof. Rule 404(b), therefore, is not a rule of character at all; but, to the contrary, it merely codifies the various means available for admitting the evidence for reasons other than character.

 As we will discuss later in detail, Rule 404(b) adopts an inclusionary rather than exclusionary approach making evidence of prior crimes, wrongs, or acts potentially admissible, subject to other limitations such as Rule 403 where they may be offered for *any* relevant purpose that does not compel an inference from character to conduct. *See United States v. Watford,* 894 F.2d 665, 671 (4th Cir.1990) (Rule 404(b) is a rule of inclusion that "allows admission of evidence of other acts relevant to an issue at trial except that which proves only criminal disposition"); *State v. Hanna,* 180 W.Va. 598, 607, 378 S.E.2d 640, 649 (1989) ("Rule 404(b) is illustrative only, and 'the exceptions to the admission of collateral crimes listed in the rule are not meant to be exhaustive,'" *quoting State v. Dolin,* 176 W.Va. at 692, 347 S.E.2d at 213). To be clear, we do not interpret Rule 404(b) as requiring the prosecution [6] to force the evidence into a predetermined compartment, but only to show a relevant purpose other than proving conduct by means of the general propensity inference ("he stole in the past, so he probably stole on this occasion").[7] On the other hand, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. *See TXO Production v. Alliance Resources,* 187 W.Va. 457, 470, 419 S.E.2d 870, 883 (1992), *quoting Huddleston v. United States,* 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771, 784 (1988) ("'the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted'"), *aff'd,* — U.S. —, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993). It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). *See* Mueller and Kirkpatrick, *Evidence* § 4.20 at 257 (1994). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.[8] *See State v. Thomas,*

---

**6.** By using the "prosecution" as the subject of our discussion, we do not mean to imply that application of Rule 404(b) of the West Virginia Rules of Evidence is limited to criminal cases. Although we apply it more often in the criminal context, we also apply it to civil cases. *See generally TXO Production v. Alliance Resources,* 187 W.Va. 457, 419 S.E.2d 870 (1992), *aff'd* — U.S. —, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993). Similarly, Rule 404(b) evidence is equally available to a defendant in a criminal case. *See generally State v. Maynard,* 170 W.Va. 40, 289 S.E.2d 714 (1982). The standards that we discuss for the admission of Rule 404(b) evidence in criminal cases when offered by the prosecution apply to all cases. We note, however, that under Rule 403 the risk of prejudice is not likely to be as great when the defendant in a criminal case offers collateral evidence against a third person. *See United States v. Aboumoussallem,* 726 F.2d 906, 911 (2nd Cir.1984) (court observes a difference in admissibility standard: a defendant's offer of 404(b) evidence "as a shield need not be as restrictive as when a prosecutor uses such evi-

dence as sword" because the problems of prejudice "are normally absent").

**7.** "[T]he rationale for this rule [is] to prevent the conviction of a defendant for one crime by use of evidence tending to show that he engaged in other legally unconnected criminal acts and to prevent the inference that because he had engaged in or may have engaged in other crimes previously he was more likely to commit the crime for which he was being charged." *State v. Simmons,* 175 W.Va. at 656–57, 337 S.E.2d at 315. *See also State v. Harris,* 166 W.Va. 72, 272 S.E.2d 471 (1980).

**8.** *See United States v. Sampson,* 980 F.2d 883, 888 (3rd Cir.1992) (record must clearly show purpose for which prior act evidence is offered; "a mere listing of all the purposes found in Rule 404(b) is insufficient"); *United States v. Tai,* 994 F.2d 1204, 1211 (7th Cir.1993) (trial judge instructed jury about all listed uses of Rule 404(b) evidence; instructions were in error because

157 W.Va. 640, 655, 203 S.E.2d 445, 455 (1974) ("[s]uch evidence will be considered strictly upon the ground of its relevancy to the purpose for which it is sought to be introduced"). This safeguard is necessary to prevent prosecutorial abuse and over-reaching. The trial court must understand that it alone stands as the trial barrier between legitimate use of Rule 404(b) evidence and its abuse. "Adversarial incentives predictably generate pretextual purposes that courts reject, and [the prosecution] must be ready to show that the probative force of the evidence on the specific point for which it is offered is sufficient to offset the danger of illegitimate use by the trier of fact as mere propensity evidence." Mueller and Kirkpatrick, *Evidence*, § 4.21 at 267.

In attempting to eliminate abusive and illegitimate uses of Rule 404(b), this Court in *TXO Production v. Alliance Resources, supra*, explicitly adopted and applied the standard and criteria discussed in *Huddleston*. We adopted the four-part analysis set forth in *Huddleston v. United States*, 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771, 783–84 (1988): [9]

"We think, however, that the protection against such unfair prejudice emanates not from a requirement of a preliminary finding by the trial court, but rather from four other sources: first, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402—as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice ... and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted."

■■■ In West Virginia, therefore, to determine whether evidence is admissible under Rule 404(b), the trial court must utilize the four-part analysis set forth above in *Huddleston*. First, the trial court must determine whether the "other crime" evidence is probative of a material issue other than character. Evidence reflecting only a propensity to commit a crime is inadmissible. The burden is squarely on the prosecution to identify, with particularity, the specific purpose for which the evidence is being offered. In other words, the prosecution has the burden of identifying a specific and relevant purpose that does not involve the prohibited inference from character to conduct.

■■■ Second, the mere fact that the prosecutor identifies another purpose under Rule 404(b) does not guarantee its admissibility. The trial court must determine whether the evidence is relevant under Rules 401 and 402, as enforced by Rule 104.[10] The

they permitted the jury to consider purposes other than that purpose for which the evidence was admitted); *United States v. Kern*, 12 F.3d 122, 125 n. 3 (8th Cir.1993) (in strongly worded opinion, court would not "countenance" trial court's use of "virtual laundry list of permissible Rule 404(b) purposes").

9. We reaffirm our general acceptance of the *Huddleston* criteria, but as modified in this opinion.

10. Rule 104 states, in pertinent part:
 "(a) *Questions of Admissibility Generally.*— Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

 "(b) *Relevancy Conditioned on Fact.*—When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."
Under *Huddleston*, Rule 104(b)'s involvement is to guarantee that the evidence is sufficient to support a finding that the defendant actually did an act that is relevant under Rules 401 and 402. Thus, Rules 401, 402, and 104(b) are intended to work together and in harmony. As will later be discussed, we disagree with *Huddleston* and its reasoning in reference to Rule 104(b)'s application to Rule 404(b) evidence. We believe that the decision to admit Rule 404(b) evidence is exclusively that of the trial court pursuant to Rule 104(a). Nevertheless, as part of the trial court's charge to the jury, the jury may be instructed, if requested, that it is not required to give any consideration to the prior acts evidence unless it finds by a preponderance of the evidence that the

evidence is relevant only if the jury can reasonably infer that the act occurred and that the defendant was the actor. Generally, relevance, in part, depends on whether the other crime, wrong, or act is similar enough and close enough in time to the matter in issue. Specifically, Rule 404(b) does not *require* that the prior act be *similar* in nature to the crime charged. The linchpin for determining admissibility of prior act evidence is one of logical relevancy. *See United States v. Vest*, 842 F.2d 1319, 1327 n. 6 (1st Cir.) (" 'similarity' is not a general requirement for admissibility under Rule 404(b)"), *cert. denied*, 488 U.S. 965, 109 S.Ct. 489, 102 L.Ed.2d 526 (1988). In assessing the probative value of the evidence, substantial consideration should be given to the purpose which has been identified by the prosecution. If the prior evidence is offered to show intent, knowledge, or *modus operandi*, a showing of similarity is usually necessary to demonstrate its probative value. On the other hand, where motive is a fact of consequence, a showing of similarity is not necessarily required.

Third, if the evidence is relevant under Rule 401, the evidence is nevertheless subject to the strictures limiting admissibility under Rule 403. Under Rule 403, evidence of prior acts to prove the charged conduct may not be admitted simply because the extraneous conduct is relevant or because it falls within one or more of the traditional exceptions to the general exclusionary rule; to be admissible, the probative value of such evidence must outweigh risks that its admission will create substantial danger of unfair prejudice.[11] The balancing necessary under

Rule 403 must affirmatively appear on the record. *See Arnoldt v. Ashland Oil, Inc.*, 186 W.Va. 394, 412 S.E.2d 795 (1991).

Finally, where requested, the trial court is required to give a limiting instruction. In *State v. Dolin*, 176 W.Va. at 696, 347 S.E.2d at 216, this Court, after discussing the reason for limiting the use of this evidence, stated:

"For this reason, it is customary to give the jury a limiting instruction with regard to its consideration of a collateral crime. This instruction generally provides that the evidence of a collateral crime is not to be considered as proof of the defendant's guilt on the present charge, but may be considered in deciding whether a given issue or element relevant to the present charge has been proven. When a defendant requests this limiting instruction, it must be given."

On other occasions, we have stated that the trial court is under no obligation to give a limiting instruction unless one is requested. *See TXO Production v. Alliance Resources,* 187 W.Va. at 471, 419 S.E.2d at 884 ("TXO did not request a limiting instruction regarding the other acts testimony"; therefore, no error occurred); *State v. Pancake*, 170 W.Va. 690, 694, 296 S.E.2d 37, 41 (1982) ("[d]efendant would have been entitled to a cautionary instruction, but did not ask for one"). Although a trial court is not obligated to give a limiting instruction unless requested, we strongly recommend that the instruction be given unless it is objected to by the defendant.[12] We deem the giving of a

---

prior acts were committed and that the defendant was the actor. This instruction could become significant in cases where the commission of the prior act is contested. A similar two-step admissibility procedure was established by this Court in *State v. Vance*, 162 W.Va. 467, 470, 250 S.E.2d 146, 149–50 (1978) ("the trial court makes an initial determination as to voluntariness, and if the court finds the confession voluntary, the jury is instructed that it must find the confession to be voluntary before they can consider it as evidence in the case").

11. Although there is no universal agreement among jurists regarding the factors to be considered by a trial court in conducting its balancing under Rule 403, there is some consensus that the

following factors are at least relevant: (a) the need for the evidence, (b) the reliability and probative force of the evidence, (c) the likelihood that the evidence will be misused because of its inflammatory effect, (d) the effectiveness of limiting instructions, (e) the availability of other forms of proof, (f) the extent to which admission of evidence will require trial within trial, and (g) the remoteness and similarity of the proffered evidence to the charged crime.

12. Because the limiting instruction is usually designed for the protection of the defendant, his request to not give the instruction should normally be honored. A defendant who objects to the giving of a limiting instruction at trial may not later complain that the instruction was not

limiting instruction and its effectiveness significant not only in deciding whether to admit evidence under Rule 404(b), but the absence of an effective limiting instruction will be considered by us on appeal in weighing the prejudice ensuing from the erroneous admission of Rule 404(b) evidence.

As we discussed in note 9, *supra*, we have decided to modify the criteria of *Huddleston* and *TXO Production* regarding the involvement of Rule 104(b) and the trial court's role in determining the admissibility of Rule 404(b) evidence. Except for a few scattered cases, we seldom have had occasion to address the standard, quantum of proof, and procedural protocol for resolving the admissibility of Rule 404(b) evidence. A discussion and clarification of these issues appear crucial to the resolution of the assignment of error in this case.

In *State v. Dolin*, *supra*, a case decided before *Huddleston*, we held that evidence offered under Rule 404(b) must be proven by clear and convincing evidence. *Dolin* envisioned that the trial court would apply this standard under Rule 104(a). Two years later, *Huddleston v. United States*, 485 U.S. at 685, 108 S.Ct. at 1499, 99 L.Ed.2d at 780, held that extraneous evidence "should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." In making its determination

> "whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The [trial] court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact ..."
> 485 U.S. at 690, 108 S.Ct. at 1501, 99 L.Ed.2d at 783.

Under *Huddleston*, the order in which this showing is made is left to the discretion of the trial court.

given or that the failure to give the instruction increased the likelihood of the jury misusing the Rule 404(b) evidence. *See State v. Dorisio*, 189 W.Va. 788, 434 S.E.2d 707 (1993).

In 1992, this Court appeared to be satisfied with the analysis of *Huddleston*[13] and stated in *TXO Production*, quoting from *Huddleston*, 485 U.S. at 685, 108 S.Ct. at 1499, 99 L.Ed.2d at 780: " '[S]uch evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act.' " 187 W.Va. at 470, 419 S.E.2d at 883. Thus, under *Huddleston* and *TXO Production*, the admissibility of Rule 404(b) evidence is to be resolved as a question of conditional admissibility under Rule 104(b), pursuant to which the trial court is to examine all the evidence and decide only whether the jury could reasonably find the conditional fact by a preponderance of the evidence.

The adoption of *Huddleston* by this Court created a conflict between the "clear and convincing" standard in *Dolin* and the "sufficient evidence to support a finding" standard under *TXO Production*. It is necessary that we now resolve the conflict. First, the West Virginia Rules of Evidence do not specifically address the evidentiary standard to be applied in Rule 404(b) determinations. Because our Rules of Evidence do not provide specific guidance on this matter, resorting to our common law is useful. Second, we explicitly reject the "clear and convincing" standard of *Dolin*. We have traditionally employed the preponderance of evidence test in determining the admissibility of evidence. We are unconvinced that a "clear and convincing" standard is necessary to preserve the values that this exclusionary rule is designed to protect and serve. It would, indeed, be an anomaly to require "clear and convincing" evidence for the admission of Rule 404(b) evidence, while at the same time requiring only a "preponderance" standard for the admission of confessions. *See State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994). We believe that the preponderance standard is adequate to guarantee that before admitting Rule 404(b) evidence, the trial court "will

**13.** In *TXO Production*, this Court stated that "[w]e find the U.S. Supreme Court's reasoning in *Huddleston* persuasive and we here use its analysis to examine the admission of the other acts evidence in the case before us." 187 W.Va. at 470, 419 S.E.2d at 883.

have found it more likely than not that the technical issues and policy concerns addressed by the Rules have been duly considered." *People v. Garner,* 806 P.2d 366, 370 (Colo.1991). The "clear and convincing" standard adopted by *Dolin* is simply no longer the controlling standard or norm for determining preliminary questions of admissibility under the West Virginia Rules of Evidence.

 Third, by adopting the preponderance standard we necessarily must modify our holding in *TXO Production.* In doing so, we observe that *TXO Production* was a civil case, and this Court did not have before it the same concerns that motivate us to reject the wisdom of *Huddleston.*[14] To expose the jury to Rule 404(b) evidence before the trial court has determined by a preponderance of the evidence that the acts were committed and that the defendant committed them would in our view subject the defendant to an unfair risk of conviction regardless of the jury's ultimate determination of these facts. We hold that the admissibility of Rule 404(b) evidence must be determined as a prelimi-

nary matter under Rule 104(a) rather than Rule 104(b).[15] We are persuaded by the reasoning of *People v. Garner,* 806 P.2d at 372, in note 4 that "[g]iven the clearly recognized potential for prejudice inherent in other-crime evidence, its seems more reasonable to us ... to require the trial court to be satisfied by a preponderance of the evidence of the conditionally relevant facts before permitting" the jury to hear them. Further, the Colorado court suggested that only after the trial court is convinced by a preponderance of the evidence is there a need "to further consider whether the proffered evidence is logically relevant and whether the probative value of other-crime evidence is outweighed by the danger of unfair prejudice." 806 P.2d at 372 n. 4. We agree.

 In review, we hold that where an offer of evidence is made under Rule 404(b), the trial court, pursuant to Rule 104(a), is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin, supra.*[16] After hearing the evidence and arguments of counsel, the trial

---

**14.** We recently stated in the civil context in *Painter v. Peavy,* 192 W.Va. 189, 192 n. 6, 451 S.E.2d 755, 758 n. 6 (1994): "Because the West Virginia Rules of Civil Procedure are practically identical to the Federal Rules, we give substantial weight to federal cases, especially those of the United States Supreme Court, in determining the meaning and scope of our rules." We recognize that Rule 104 of the West Virginia Rules of Evidence is also textually identical to its federal counterpart and, as such, the decisions of the United States Supreme Court interpreting this Rule are entitled to due consideration. In this instance, however, we believe that our policy would not be served by undermining a long-standing tradition of allowing judges to first decide the admissibility of potentially prejudicial evidence by a preponderance of the evidence. In *State v. Thomas,* 157 W.Va. at 657, 203 S.E.2d at 456, we stated: "The control of the scope, latitude and method of introduction of arguably admissible evidence of collateral crimes and charges is vested in the trial court. Motions to introduce and motions and objections for exclusion are addressed to the sound discretion of the court."

On the other hand, we agree with *Huddleston* to the extent that it held the trial court is to consider all the evidence in making its Rule 404(b) determinations: " 'Individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater

than its constituent parts.' *Bourjaily v. United States,* 483 U.S. 171, 179–80[, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144] (1987)." 485 U.S. at 691, 108 S.Ct. at 1496, 99 L.Ed.2d at 783.

**15.** Unquestionably, Rule 104(a) vests in the trial court the authority to make these admissibility determinations even where there exists a precondition to their admissibility. In these instances, admissibility depends upon application of policy considerations, such as the application of the hearsay rule and its exception, the existence of privileges, or other protective policies of the exclusionary rules. 1 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 104[02] at 104–20–24 (1994). Rule 104(b), on the other hand, deals with issues of "probative force rather than evidentiary policy." *United States v. James,* 590 F.2d 575, 579 (5th Cir.), *cert. denied* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). Obviously, the trial judge is not in his traditional role in determining such matters under Rule 104(b). The trial judge under Rule 104(b) merely determines as a preliminary matter whether the foundation evidence is sufficient to support a finding by the jury of the fulfillment of the condition.

**16.** In Syllabus Point 3 of *Dolin, supra,* this Court stated:

 "Before a trial court can determine that evidence of collateral crimes is admissible under

court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 and conduct the balancing required under Rule 403. If the trial court is then satisfied that Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

 Against this background, we review the trial court's decision to admit evidence pursuant to Rule 404(b) under an abuse of discretion standard. *State v. Bell,* 189 W.Va. 448, 453, 432 S.E.2d 532, 537 (1993); Syl. pt. 1, *State ex rel. Tinsman v. Hott,* 188 W.Va. 349, 424 S.E.2d 584 (1992). Our function on this appeal is limited to the inquiry as to whether the trial court acted in a way that was so arbitrary and irrational that it can be said to have abused its discretion. In reviewing the admission of Rule 404(b) evidence, we review it in the light most favorable to the party offering the evidence, in this case the prosecution, maximizing its probative value and minimizing its prejudicial effect.

### III.

In this circumstantial evidence case, the extensive use of collateral crimes evidence is impressive. The prosecution spent a substantial portion of the opening and three full days of its case discussing collateral crimes

---

one of the exceptions, an *in camera* hearing is necessary to allow a trial court to carefully consider the admissibility of collateral crime evidence and to properly balance the probative value of such evidence against its prejudicial effect."

Although a pretrial hearing was conducted in this case, the hearing was not the meaningful type contemplated by *Dolin.* In fact, as stated by this Court in *Dolin,* the trial court dealt only with generalities:

"In the present case, the trial court did hold an *in camera* hearing prior to trial to consider the admissibility of the collateral crime evidence. However, at the hearing, the specific collateral sexual offenses the State planned to present at trial and the possible applicable exceptions were simply discussed in general terms. The *in camera* hearing is rendered meaningless if a trial court is not informed specifically of the details surrounding each collateral offense and is not informed of which exception is applicable. A trial court needs such information so that it can examine the similarities and differences between the collateral offenses and the present offense and can apply the balancing test to determine whether the probative value outweighs the prejudicial effect of such evidence." 176 W.Va. at 693–94, 347 S.E.2d at 214.

The prosecution here called only one witness, Jim Earles, who testified about two collateral subjects. The rest of the information was presented not in factual terms, but in conclusions. Evidence offered at trial, such as infidelity, was never mentioned by the prosecution at the hearing. The prosecution concluded by suggesting that all this evidence was necessary to show the total picture, including the defendant's frame of mind, intent, motive, scheme, and identity. The prosecution argued that "[t]he same person that killed here is the same person that did all of these other schemes. So, under Rule 404(b) I believe this evidence is all tied in." In response, the trial court ruled that the jury needed to know the entire picture of the events surrounding the murder.

We do not mean to suggest, however, that the trial court is obligated to conduct a full blown bench trial of the other crime, which would be nothing but a replication of the facts later introduced before the jury. The trial court has discretion whether to accept a proffer from the prosecution. If permitted, the proffer must show what specific evidence the prosecution intends to introduce and the purpose for its admission. The proffer must be sufficient to show by a preponderance of the evidence that the act or conduct occurred and that the defendant was connected to it. As stated by the court in *Daniels v. United States,* 613 A.2d 342, 347 (D.C.App.1992):

"If the government fails somehow to present at trial all the evidence that it had proffered or if the trial court finds the evidence in some part deficient because of credibility problems or otherwise, the trial court considers the evidentiary sufficiency and tailors the remedy according to the severity of the failure of proof. The trial court, in its discretion, may, for example, restrict the government's closing argument, give limiting instructions to the jury, or, where it deems there is a probability of 'a miscarriage of justice,' declare a mistrial."

evidence. The remainder of the prosecution's case was also peppered with references to collateral crimes issues. The State argued that this prior crimes evidence fit within Rule 404(b) and would show motive and the defendant's pattern of portraying himself in a sympathetic role. On July 31, 1990, during a pretrial hearing, the trial court decided that the prosecution could present collateral crimes evidence to the jury. Although noting that it did not want the defendant convicted for murder by other conduct evidence, the court stated that it thought the jury needed to know not only what happened the night of the murder, but also of the surrounding events. The trial court agreed that a cautionary instruction might be necessary and stated: "I would hope that the State won't dwell on those [other conduct] any more than they have to[.]"

During the course of the prosecution's case-in-chief, the testimony of approximately fifteen witnesses covered only collateral evidence. In addition to the fifteen witnesses, the prosecution elicited other collateral crime information during the course of the trial. In fact, several times the prosecution asked both prosecution and defense witnesses whether they knew that the defendant had stolen six million dollars. The defendant in the opening and throughout the trial freely admitted his illegal activity. The defense made timely objections to most of the prosecution's witnesses and frequently asked for limiting instructions. The judge generally complied with the request for the instruction.[17] There were also several references to the collateral crimes evidence in the prosecution's opening statement and closing argument. In fact, one of the most blatant examples of the prosecution's use of collateral crimes evidence was during their rebuttal portion of the closing argument: "Mr. McGinnis was a suspect immediately in this

---

**17.** Notably, the defense did not ask for a limiting instruction concerning collateral evidence until during the direct examination of James Nighbert Aldridge. By the time Mr. Aldridge testified, four other witnesses had already testified about collateral acts.

Mr. Aldridge's examination took place August 1, 1990. The defense made a motion for a limiting instruction to be mandatory any time the State introduced evidence of collateral crimes, acts, or other matters. On the morning of August 2, 1990, the circuit court gave the following instruction to the jury:

"You have heard evidence concerning alleged criminal conduct or other acts of the defendant which are not charged in this indictment. You are instructed that such evidence is not admitted as proof of the defendant's guilt on the present charge. This evidence is admitted for a limited purpose only, and it may be considered by you only in deciding whether a given issue or element relevant to the present charge has been proven. In this instance, the evidence of embezzlement, mail fraud and possible tax violations may be considered only for the purpose of determining whether the state has established motive, intent, absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each other that the proof of one tends to establish the others, the identity of the person charged with the commission of the crime on trial and to allow you, the jurors, to see the total picture of the events and acts leading to the crime charged.

"You may not use this evidence in consideration of whether the State has established the crime of homicide charged in the indictment.

In addition, such evidence is not relevant to any other matters, such as the character of the defendant, whether the defendant is a bad person, or whether the defendant had the propensity or the disposition to commit the crime charged. This evidence may not be considered in that regard, since the defendant's character is not an issue. In addition, it is not proper for the State to prove a criminal case by evidence that a defendant may have committed other criminal acts or may be a bad person.

"Accordingly, this evidence may be considered by you only for the limited purpose for which it has been admitted."

At the request of the defendant, the trial court gave the instruction five additional times. The only variation was that the trial court substituted the actual event that the testimony in question covered instead of listing each incident of collateral evidence. We note that the instruction lists the litany of purposes appearing in Rule 404(b). As we discussed earlier, the instruction should be tailored to the specific purpose identified by the prosecution. Also, the instruction refers to "alleged *criminal* conduct or other acts of the defendant." We recommend that words such as "criminal," "crime," or "offense" be avoided in an instruction. Terms such as "conduct," "act," or "transaction" should be adequate to convey the point to the jury. Because the record indicates that this instruction was drafted by defense counsel and no objection was made to it at trial, we find no error in the granting of the instruction. *See Shamblin v. Nationwide Mut. Ins. Co.,* 183 W.Va. 585, 599, 396 S.E.2d 766, 780 (1990) ("the appellant cannot benefit from the consequences of error it invited").

[murder] case because he was at the time of the death being investigated for arson, tax evasion, embezzlement, and mail fraud, and his wife was found dead. Use reason and common sense to determine why he was immediately a suspect."[18]

The defendant accuses the State of excessively using five different kinds of collateral crimes evidence. This evidence covered the defendant's alleged infidelity, embezzlement, arson, tax fraud, and other debts. The defendant recognized that collateral misconduct evidence may be admissible under certain circumstances. However, it is argued that the prosecution abused the Rule 404(b) exception and that the massive volume and scope of the collateral evidence presented had no logical relevance to the murder trial and denied the defendant the "fundamental principles of fairness" discussed in *State v. McArdle*, 156 W.Va. 409, 417–18, 194 S.E.2d 174, 179 (1973), *modified on other grounds*, *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982). Not only were acts for which the defendant had been convicted (i.e. embezzlement/mail fraud scheme) revealed during the trial, but the prosecution brought up other unrelated acts for which defendant had not been tried and essentially had a mini-trial for them. For example, evidence was presented that the defendant was involved in setting fire to his office. The prosecution went so far as to have a witness show how the defendant could have freed himself following the fire and pointing out that the prosecutors had not dropped the arson investigation.

After carefully reviewing the record, we can find no logical nexus between the massive Rule 404(b) evidence and the material issues in this murder case. Certainly, neither the prosecution nor the trial court manifested in any distinctive manner how most of the evidence could be relevant under Rules 401 and 402.[19] The prosecution did not offer any reason for the introduction of the infidelity evidence. Conceivably, it was offered to show that the defendant had another woman and that this was his motive for killing his wife. This motive never materialized at trial, and the evidence should have been excluded for three reasons. First, the infidelity evidence was never shown to be relevant under Rule 401. Second, even if theoretically relevant under Rule 401, there was insufficient information about the transaction to permit any rational inference of infidelity. To be specific, the identities of the women were never revealed and their activities and purpose for being at the same motel with the defendant were left for speculation. Third, because the probative value of this evidence was so slight, the trial court could not, without abusing its discretion, find that the evidence's prejudicial effect did not substantially outweigh its probative value.

More troubling is the introduction of the embezzlement and mail fraud evidence. The murder and embezzlement counts were severed for trial purposes. The obvious reason for the severance was to avoid the introduction of prejudicial and extraneous evidence. The prosecution agreed to the severance. In fact, if the embezzlement evidence was admissible at the murder trial, no purpose would be served for ordering two trials.[20] If the prosecution wanted to intro-

---

18. Notably, the defense did not object to the prosecution's comments.

19. The only Rule 404(b) evidence that we find that could be relevant and that would meet the balancing test of Rule 403 is that of the fire and the surrounding circumstances. The evidence shows that defendant's office suffered substantial fire damage on August 20, 1980, two days prior to a scheduled meeting between the defendant and Glen Bjornisen, an agent for the Internal Revenue Service, concerning a criminal tax investigation and seven days before a meeting by the Harvey Holding Company to consider replacing the defendant with outside accountants. An upstairs tenant, hearing the defendant's screams, discovered the defendant in his smoke filled of-

fice with his hands bound and his mouth covered. A number of witnesses testified about the extent of the fire damage and the defendant's injuries. The prosecution sought to establish that the only things severely damaged were the financial records needed in the scheduled meeting and to show that there was nothing to prevent the defendant from escaping the fire unassisted. Because of the similarity of some of the facts, we can find no abuse of discretion in the admission of this evidence.

20. A severance is properly denied in a multiple count indictment where "[e]vidence that tended to prove or disprove one count would similarly go to prove or disprove the other three counts. Therefore, severance of the four counts would

duce evidence of the embezzlement count, it should have resisted the severance. In *State v. Spicer,* 162 W.Va. 127, 133, 245 S.E.2d 922, 926 (1978), we condemned a prosecutor's introduction of other crimes evidence under somewhat similar circumstances:

"The serious and regrettable problem lurking behind the evidentiary matters in this case is that of overzealous prosecution. As the State says in its brief, the prosecutor conducted the trial from beginning to end as if it were a trial for rape. The prosecutor could have tried the defendant for both rape and armed robbery, but having elected to proceed on a single count indictment for armed robbery, the prosecution was not at liberty to introduce other crime evidence beyond that necessary to explain or prove the crime charged in the indictment. The defendant was not on trial for rape. The details of the rape did not go to show any of the elements of the offense being tried, and they were unnecessary for jury understanding of how the armed robbery was committed. It was thus error to admit them. The evidence should have been limited to such reference only as was reasonably necessary to an intelligent investigation of the charge being tried."

The prosecution presented eleven witnesses who testified about the defendant's embezzlement from the Nighbert Land Company. In this case, the error was exacerbated by the introduction of evidence regarding the federal mail fraud conviction. Again, the relevance of these criminal acts is not shown from the trial record; and, we hold it was error to admit them. We make the same finding as to the evidence that the defendant was two million dollars in debt to a Huntington bank. The prosecution contends that the debt along with the revelations concerning the embezzlement and the mail fraud convic-

tion caused the defendant to panic and become concerned that his wife would learn about his wrongdoings. Thus, these facts provided a motive for him to kill her. Not only is this argument implausible, but the defendant's problem was not with his wife, but with the Huntington bank and the state and federal prosecutions. Even if his wife learned about these events, as long as she remained his wife, she was prevented by law from being a witness against him at least in State prosecutions. *See* W.Va.Code, 57–3–3 (1923). Finally, the defendant argues that this collateral evidence was not pertinent and that the prosecution was unable to show that Mrs. McGinnis actually had any knowledge of the defendant's behavior.[21] Rather, the defendant asserts, and we agree, that the collateral evidence added impermissible substance to the prosecution's otherwise weak case and created the likelihood that the jury would convict the defendant solely because of his prior criminal conduct.

■ The prosecution introduced evidence of the failure to file State income tax returns for the years 1983 to 1986. Jim Earles, a criminal investigator with the State Tax Department, testified concerning the excuses made by the defendant regarding his failure to file the returns. Although there was substantial disagreement between the State and the defendant over the legitimacy of these excuses, the failure to file or the legitimacy of the excuses can hardly be viewed as relevant in this murder case. Moreover, the relevancy of this evidence was certainly diminished when evidence was offered showing that the defendant did eventually file the required returns, received a substantial tax refund, and the State's investigation was closed seventeen months prior to the death of Mrs. McGinnis.

have resulted in merely four separate trials involving the same set of facts." *State v. Clements,* 175 W.Va. 463, 471, 334 S.E.2d 600, 608, *cert. denied,* 474 U.S. 857, 106 S.Ct. 165, 88 L.Ed.2d 137 (1985). *See also State v. Hatfield,* 181 W.Va. 106, 110–11, 380 S.E.2d 670, 674–75 (1990) (while the decision to grant a severance pursuant to Rule 14(a) of the West Virginia Rules of Criminal Procedure is a matter within the discretion of the trial court, the danger of prejudice increases where, as here, the initial joinder or consolida-

tion is premised on the similar character of unrelated offenses).

**21.** A careful review of the record shows that the prosecution did not provide evidence that Mrs. McGinnis had knowledge of any of her husband's prior behavior. The best that we can determine is that the prosecution presented one witness that stated that Mrs. McGinnis knew about rumors connecting the defendant with the fire in his office.

■ We can find nothing in the record that indicates that the trial court did the required balancing under Rule 403. At the conclusion of the pretrial hearing, the trial court stated that it had been thinking about the admissibility of the Rule 404(b) evidence for some time. Specifically, noting that it wanted to make sure that the defendant would be convicted of murder and not of the evidence of other acts and that he hoped that the State would not dwell on the Rule 404(b) evidence, the trial judge stated that he would be more concerned about admitting the evidence if it involved prior crimes of violence. As stated earlier, when admitting evidence under Rule 404(b), the record must clearly reveal the analysis the trial court used to comply with the mandates of Rule 403. *Arnoldt v. Ashland Oil, Inc.*, 186 W.Va. at 408, 412 S.E.2d at 809 ("[t]he record of this case indicates that the trial judge failed to conduct the balancing inquiry required by West Virginia Rule of Evidence 403. Accordingly, we find that the trial court's failure to exclude evidence of Ashland's unrelated past acts constitutes reversible error").

■ A plethora of West Virginia cases have held that when the prosecution seeks to admit cumulative evidence under Rule 404(b), it runs the risk of running afoul of our rule prohibiting "shotgunning." *State v. Thomas*, 157 W.Va. at 656, 203 S.E.2d at 456. *See also State v. Messer*, 166 W.Va. 806, 277 S.E.2d 634 (1981); *State v. Spicer, supra; State v. Stollings*, 158 W.Va. 585, 212 S.E.2d 745 (1975), *overruled on other grounds, State v. McAboy*, 160 W.Va. 497, 236 S.E.2d 431 (1977), *overruled, State v. Kopa*, 173 W.Va.

43, 311 S.E.2d 412 (1983). In *Thomas*, this Court stated:

" 'A prudent prosecutor limits himself to what is needed to prove the charge in the indictment. In the process of proving the charge, other offenses may sometimes come to light incidentally, but when the prosecution devotes excessive trial time to this type of "background" material, it runs the risk of trespassing into the impermissible area and jeopardizing any resulting conviction.' *United States v. Mastrototaro*, 455 F.2d 802, 804 (4th Cir.1972)." 157 W.Va. at 656, 203 S.E.2d at 456.

We hold, as we did in *Messer*, that "[i]n the instant case, ... the prosecution was permitted to do the very thing we condemned in *State v. Thomas* ...; that is, the State engaged in 'shotgunning' or the excessive employment of other crime evidence to convict the defendant." 166 W.Va. at 809, 277 S.E.2d at 636. We would be hesitant to reverse this conviction if the trial court admitted only evidence of one of the examples discussed above. The cumulative admission of the evidence under Rule 404(b), however, presents us with the likelihood that the jury convicted the defendant because of his character and not because of the evidence surrounding the murder. In this circumstantial evidence case, these errors cannot be regarded as harmless.[22] *See State v. Walker*, 188 W.Va. 661, 668, 425 S.E.2d 616, 623 (1992) ("[w]hen the circumstantial nature of the evidence requires the jury to construct a chain of logical inferences in order to find guilt, strict adherence to the rules of evidence be-

---

**22.** Our decision to reverse this conviction is made difficult by the failure of defense counsel to make timely and rule-specific objections. At trial, the defense did not object on Rule 404(b) grounds to several accusatory questions to the effect that the defendant stole six million dollars. Defense counsel did not object to the prosecution's evidence that the defendant rented a hotel room while accompanied by two dark haired women, and defense counsel also made no objections to the testimony of Officer William Lunsford or Dr. Hoyt Burdick. Officer Lunsford was one of the first police officers to arrive after the office fire, and Dr. Burdick was the doctor that examined the defendant after the fire. Furthermore, statements and concessions made by the defense came perilously close to waiving or curing some of the errors we find in this case.

We observe, however, that most of defense counsel's statements came in response to statements or evidence that the prosecution had initiated. *See State v. Richards*, 190 W.Va. 299, 304, 438 S.E.2d 331, 336 (1993) (evidence of character came "only after the State had introduced evidence of collateral crimes committed by the defendant ... and under these circumstances, the Court cannot conclude that they laid the foundation for the introduction of collateral crimes evidence"). Similarly, the issue of Rule 404(b) evidence was initially considered by the trial court in a motion *in limine*, and our most recent cases have held that the appealing party is under no obligation to renew the matter at trial absent a change of circumstances. *See Wimer v. Hinkle*, 180 W.Va. 660, 379 S.E.2d 383 (1989).

**164**

comes crucially important"). As we said in *Thomas,* "the indiscriminate receipt of such evidence in volume and scope can predispose the minds of the jurors to believe the accused guilty of the specific crime by showing him guilty or charged with other crimes.... The excessive zeal of the prosecutor in introducing evidence of collateral crimes can and has affected the accused's right to a fair trial." 157 W.Va. at 656–57, 203 S.E.2d at 456.

For the foregoing reasons, the judgment of the Circuit Court of Cabell County is reversed, and this case is remanded.

Reversed and remanded.

BROTHERTON, C.J., did not participate.

MILLER, J., sitting by temporary assignment.