## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 11-1620** (Ohio County 08-F-113)

**Terry Watts, Sr.,**
**Defendant Below, Petitioner**

**FILED**

**April 12, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

### MEMORANDUM DECISION

Petitioner Terry Watts Sr., by counsel Christopher Alan Scheetz, appeals his conviction and sentence for one count of forgery and one count of uttering. The State of West Virginia, by counsel Laura Young, has filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and the legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January and February of 2008, Delores Cutlip allowed petitioner to sleep on her couch from time to time because he was "having troubles at home" and had nowhere else to go. Early in February of 2008, Ms. Cutlip purchased a $181 money order from the post office in order to pay her rent. Ms. Cutlip made the money order out to her landlord, signed it, placed it in an envelope, and then asked petitioner to drop the money order at the "office." Petitioner agreed. About three weeks later, Ms. Cutlip received an eviction notice for non-payment of rent.

Ms. Cutlip obtained a copy of the money order from the post office. The payee and payer sections of the money order had been whited out. Written over the white-out in the payee section was petitioner's name, "Terry L. Watts." Written over the white-out in the payer section was the following name and address: "James Watts, 237 North Seventh Street, Martins Ferry, Ohio." Petitioner had previously lived at that address. The identification numbers on the uttered money order matched the identification numbers on Ms. Cutlip's receipt for the money order. Ms. Cutlip made a report to the Wheeling Police Department and gave them her receipt for the money order and the copy of the uttered money order that she had obtained from the post office.

The police discovered that the money order had been uttered at a convenience store in Wheeling. The signature on the back of the money order was blurry but the first name appeared to begin with a "T" and end with a "y." There were no other identifying numbers on the back of the money order, such as a driver's license or social security number. The convenience store's owner later testified that petitioner was a known customer at the store and that it was likely that the employee who had cashed the money order knew the person who presented it. Otherwise, the

1

employee would have written an identifying number on the back of the money order when it was cashed.

On September 8, 2008, petitioner was indicted on one count of forgery of Ms. Cutlip's money order, and one count of uttering the money order, both in violation of West Virginia Code § 61-4-5(a).

At pre-trial hearings, the circuit court ruled that the State could not admit petitioner's 2002 indictment or conviction for uttering a forged document, but could present evidence that petitioner had admitted to uttering in 2002. The circuit court also granted petitioner's request for funds to hire a handwriting expert. Petitioner retained a handwriting expert who stated that she needed the original money order to conduct her examination. The State did not have possession of the original but agreed to attempt to obtain it. Petitioner claims the State never gave his counsel or his expert the original money order prior to trial, but that the State introduced the original money order into evidence at trial.

At petitioner's November 18, 2008, trial both a police officer and petitioner's 2002 victim testified that petitioner had admitted to uttering in 2002. The jury found petitioner guilty on both counts. At petitioner's January 22, 2009, sentencing hearing, the circuit court noted that petitioner had at least ten or eleven previous criminal convictions and had never made restitution to his 2002 victim. The circuit court then denied petitioner's motion for a new trial and sentenced him to not less than one nor more than ten years in prison for uttering, and not less than one nor more than ten years in prison for forgery. Both sentences were to run consecutively.

On appeal, petitioner first argues that pursuant to *State v. Green*, 207 W.Va. 530, 534 S.E.2d 395 (2000), his consecutive sentences for forgery and uttering violate the proportionality and the cruel and unusual punishment clauses of Article III, Section 5 of the West Virginia Constitution and the cruel and unusual punishment clause of the Eighth Amendment of the United States Constitution. In support of his argument, petitioner highlights that he was convicted of forging and uttering just one money order worth only $181. Petitioner claims that if he had been convicted of simple theft of $181, his maximum sentence would have been just one year in jail.

"As a general rule, the sentence imposed by a trial court is not subject to appellate review. 'Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.'" Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982). Here, petitioner's sentence is within the statutory limits and he does not allege that it was based on impermissible factors. Nor does petitioner's sentence shock the conscience. *See* Syl. Pt. 5, *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983). Petitioner's sentence is similar to the sentences for other property offenses such as breaking and entering, West Virginia Code §61-3-13(a) (one to ten years in prison), and grand larceny, West Virginia Code §61-3-12 (one to ten years in prison). Additionally, petitioner has a lengthy criminal history, failed to pay restitution to a previous victim, and expressed no remorse for the instant offense. Thus, we find that petitioner's sentence does not constitute cruel and unusual punishment and is not disproportional. Hence, the circuit court did not err imposing it.

Petitioner next argues that his conviction for both forgery and uttering violates his rights against double jeopardy pursuant to the Eighth Amendment of the United States Constitution and to Article III, Section 5 of the West Virginia Constitution because the facts underlying petitioner's convictions were part of the same transaction, regarded the same writing, and impacted the same victim.

West Virginia Code §61-4-5(a) states,

[i]f any person forge any writing, other than such as is mentioned in the first [§ 61-4-1] and third sections [§ 61-4-3] of this article, to the prejudice of another's right, or utter or attempt to employ as true such forged writing, knowing it to be forged, he shall be guilty of a felony and, upon conviction, shall be confined in the penitentiary not less than one nor more than ten years, or, in the discretion of the court, be confined in jail not more than one year and be fined not exceeding five hundred dollars.

Forgery and uttering are two separate crimes as shown by the conjunction "or" in West Virginia Code § 61-4-5(a). Furthermore, each crime contains an element that the other does not. Thus each crime requires proof that the other does not. *See Blockberger v. United States*, 284 U.S. 299 (1932). For a forgery conviction, the State must prove that the defendant altered a writing to the prejudice of another's rights. For an uttering conviction, the State must prove that the defendant employed the writing. Here, the State proved that petitioner had forged the money order because he altered it to the prejudice of Ms. Cutlip. The State also proved that petitioner uttered or employed the money order by cashing it at the convenience store. Therefore, punishing both crimes relating to this single writing does not violate the prohibition against double jeopardy.

Petitioner's third assignment of error is that he was denied his right to a fair trial because the State failed to give him the original money order prior to trial and, as a result, his handwriting expert could not examine the money order and prove that the writing on it was not his. In support of his argument, petitioner cites to *State v. Grimm*, 165 W.Va. 547, 555, 270 S.E.2d 173, 178 (1980), in which the Court stated, "non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case." Petitioner argues that the State's failure to disclose the original money order hampered the preparation and presentation of his case.

There are no facts in the record to support petitioner's contention that the State failed to timely provide petitioner access to the original money order or that petitioner was denied expert handwriting analysis. It appears that petitioner's counsel was aware that the State had possession of the original money order because, at trial, petitioner's counsel prompted the State to admit the original money order into evidence and to question the investigating officer about it. Additionally, when the State admitted the original money order, petitioner's counsel did not object, express surprise, or ask for a continuance to have the handwriting on the original money order analyzed by petitioner's expert.

Petitioner's fourth assignment of error is that the circuit court improperly allowed the admission of petitioner's 2002 admission to uttering in violation of Rule 404(b). Petitioner argues that although the prosecution claimed that it sought to introduce the admission solely for the purpose of showing lack of mistake, petitioner never raised a "mistake" defense. Petitioner also argues that, in 2002, he admitted to uttering a *check*, and not a money order. Therefore, his 2002 admission was not relevant to his 2008 charge of uttering.

We have articulated the following standard of review for an appeal of a trial court's admission of 404(b) evidence:

> The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403 [of the West Virginia Rules of Evidence].

*State v. LaRock,* 196 W.Va. 294, 310-11, 470 S.E.2d 613, 629-30 (1996). In *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994), we explained that this Court will "review the trial court's decision to admit evidence pursuant to Rule 404(b) under an abuse of discretion standard." *McGinnis*, 193 W.Va. at 159, 455 S.E.2d at 528. McGinnis further held:

> Our function on . . . appeal is limited to the inquiry as to whether the trial court acted in a way that was so arbitrary and irrational that it can be said to have abused its discretion. In reviewing the admission of Rule 404(b) evidence, we review it in the light most favorable to the party offering the evidence, in this case the prosecution, maximizing its probative value and minimizing its prejudicial effect.

*McGinnis*, 193 W.Va. at 159, 455 S.E.2d at 528.

*State v. Willett*, 223 W.Va. 394, 397, 674 S.E.2d 602, 605 (2009).

We first note that petitioner failed to include in his record on appeal either the transcript of the pretrial hearing regarding the admission of the evidence or the circuit court's order that permitted the State to use the evidence. However, a review of the record on appeal reveals that the State timely notified petitioner of its intent to introduce the Rule 404(b) evidence to show petitioner's intent to defraud, plan, and absence of mistake. Furthermore, the circuit court gave a limiting instruction when the 404(b) evidence was admitted and again in its charge to the jury. Thus, when viewed in the light most favorable to the State, we find that the circuit court did not

err in admitting petitioner's 2002 admission to uttering because the evidence was admissible for a legitimate purpose under Rule 404(b), and not to show petitioner's criminal disposition.

Petitioner's fifth assignment of error is that the circuit court erred in denying his motion for a judgment of acquittal where the State's evidence was insufficient to prove each element of forgery and uttering.

> "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 1, *State v. Juntilla*, 227 W.Va. 492, 711 S.E.2d 562 (2011). We have also stated that

> "[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syl. pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 2, *State v. McFarland*, 228 W.Va. 492, 721 S.E.2d 62 (2011). Petitioner fails to list the elements of either crime and fails to state which of these elements the State allegedly failed to prove. Nevertheless, having reviewed the record on appeal, we find that a jury could have found that the State proved the essential elements of the crimes of forgery and uttering beyond a reasonable doubt.

Petitioner's sixth assignment of error is that, because his trial was "replete with errors," he was denied his right to a fair trial.

Based upon our review of the parties' arguments and the record of appeal, we find no error in relation to petitioner's various assignments of error either standing alone or in any combination. As such, we decline to find that the cumulative error doctrine applies to this appeal.

Petitioner's seventh and final assignment of error is that his trial counsel failed to provide effective assistance.

This Court's ability to review a claim of ineffective assistance of counsel is very limited on direct appeal. Such a claim is more appropriately developed in a petition for writ of habeas corpus. Syl. Pt. 11, *State v. Garrett*, 195 W.Va. 630, 466 S.E.2d 481 (1995); Syl. Pt. 10, *State v. Triplett*, 187 W.Va. 760, 421 S.E.2d 511 (1992). Accordingly, we decline to rule on any claims of ineffective assistance of counsel in the context of this direct appeal and express no opinion on the merits of petitioner's ineffective assistance claims.

For the foregoing reasons, we affirm.

Affirmed.

**SSUED:**  April 12, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II