# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 14-0918** (Cabell County 13-F-5)

**Thomas M. White, Jr.,**
**Defendant Below, Petitioner**

**FILED**

November 20, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Thomas M. White, by counsel Timothy P. Rosinsky and Kerry A. Nessel, appeals the Circuit Court of Cabell County's "Final Amended Order of Commitment" entered August 14, 2014, that remanded petitioner to the custody of the West Virginia State Penitentiary following his conviction by a jury of two counts of first degree felony murder. The State of West Virginia, by counsel Ryan Shreve and Laura Young, filed a response. Petitioner's assignments of error herein all relate to the State's admission of evidence at petitioner's trial pursuant to Rule 404(b) of the West Virginia Rules of Evidence.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On November 6, 2012, two armed men entered a known drug house located at 1932 Foster Avenue, Huntington, West Virginia. Soon thereafter, at about 10:30 a.m., Cabell County 911 received a call from a young girl who lived at that address; the girl said she had heard gun shots fired inside the house. Around the same time, another child who lived nearby saw two adult, black males leave 1932 Foster Avenue; one was running and the other was limping. Both men stopped at a red Honda Pilot (the "Honda") which was parked down the street. The men argued and then ran off in different directions.

Law enforcement officers arrived at the scene soon thereafter. In the house, they found Darrell Fuqua dead from a gunshot to the back of the head and a gunshot to the leg. They also found Devonte Penn who was seriously injured from a gunshot to the leg. Mr. Penn told the officers that he was shot by "Rocky, with a mole on his face." About that same time, petitioner arrived at Cabell Huntington Hospital seeking treatment for a gunshot wound to his abdomen. Petitioner claimed he had been wounded in a "drive-by" shooting.

1

Later that morning, officers saw a man near the scene of the crime who matched Mr. Penn's description of his assailant. When questioned, the man identified himself as Rocky Williams. Mr. Williams ("petitioner's accomplice") was taken into custody and questioned.

Also on the morning of the shootings, law enforcement officers searched the Honda. They found a Ruger pistol under the front seat; the Ruger was later found to contain petitioner's latent fingerprint and his blood. The police also learned that the Honda was registered in the name of petitioner's girlfriend.

The police also searched 1932 Foster Avenue that day and found several cell phones; some were inside the house, some were on the porch of the house, and two more were found in the mulch next to the porch. One of the cell phones found on the porch was a Virgin Mobile phone, which was later determined to belong to petitioner's accomplice. Another one of the cell phones, a Samsung phone—which was later linked to petitioner—was found in the mulch next to a set of car keys for the Honda. The police "dumped" the cell phones and found phone calls between the Virgin Mobile (petitioner's accomplice's) phone and the Samsung (petitioner's) phone that were made the day before and the day of the crimes at issue in this case. The police also discovered text messages sent from the Samsung (petitioner's) phone to another phone prior to the crimes at issue in this case.

On November 7, 2012, the day after the shootings, Mr. Penn died as a result of the gunshot wound to his leg.

On January 16, 2013, petitioner was indicted on two counts of first degree felony murder pursuant to West Virginia Code § 61-2-1 for his part in the November 6, 2012, crimes. Petitioner's accomplice was also indicted for multiple crimes, including burglary and second degree murder. Thereafter, but prior to petitioner's trial in this matter, petitioner's accomplice pled guilty to burglary and second degree murder.

Prior to petitioner's trial, the State notified the defense of its intent to introduce evidence pursuant to Rule 404(b) of the West Virginia Rules of Evidence. The first piece of Rule 404(b) evidence consisted of two "call logs" each of which displayed a chronological list of phone calls sent from the Virgin Mobile (petitioner's accomplice's) cell phone. Included in those calls were petitioner's accomplice's calls to petitioner's Samsung phone the day before and the day of the shootings at 1932 Foster Avenue. The second piece of Rule 404(b) evidence was a transcript of text messages sent from the Samsung phone found at the scene. The texts were sent by a person known as "T-man" to a person known as "Big Dog" and regarded drug dealing. The first six of these texts read as follows:

[1] "Chillin, can you find bars?"

[2] "They 7."

[3] "You was trying to grab a couple ounces."

[4] When I come, I'm bring an eye, she wants to see."

2

[5] "On my way, just make sure that weighs so she don't trip."

[6] "You want a front."

The seventh text message also regards drug dealing; however, it is different than the other messages given that it threatens violence, as follows:

[7] "Jus know ima kill u bitch, I had it on me u lucky we was in that fuckin parking lot but jus know u dead bitch . . . . U a bitch ima kill u ya momma ya baby and whoever else with u u pussy ass cracker . . . . Just know yall dead, I shoulda shot ya ass in the parkin lot. . . ."[1]

At a January 16, 2014, *McGinnis*[2] hearing on the proposed Rule 404(b) evidence, the State proffered the evidence it would produce at trial to show that petitioner was the "T-man" who had sent the seven text messages. The State argued that the text messages were admissible to show petitioner's intent and/or motive to commit the crime charged. The circuit court deemed the evidence admissible at trial for the purpose of showing petitioner's intent and/or motive, as follows:

I think that kind of goes to [petitioner's] business plan . . . of how [petitioner] did business as a drug dealer, which seems to very neatly fit into [the State's] theory that [petitioner and petitioner's accomplice] went [to 1932 Foster Avenue] to further their business and get more drugs with a possible use of violence.

Petitioner timely lodged his objection to this ruling.

At petitioner's trial, the State called petitioner's accomplice to establish his and petitioner's motive for their crimes. Petitioner's accomplice testified that he and petitioner had gone to 1932 Foster Avenue to steal drugs. Petitioner's accomplice further testified that he shot Mr. Fuqua in the back of the head and in the leg. The State also introduced evidence showing that the Samsung phone belonged to petitioner. The State then introduced the text messages through its witness, Lt. Charles Kingery of the Huntington Police Department. However, Lt. Kingery did not read any of the text messages to the jury or discuss the contents of the text messages in any fashion. Petitioner timely continued his objection to the admission of the text messages. Following the admission of the text messages, the circuit court did not give a limiting instruction regarding the Rule 404(b) evidence, nor did petitioner's counsel move the court for such an instruction.

The State's next witness, Cpl. Paul Hunter of the Huntington Police Department, testified regarding the first six text messages for the purpose of defining certain terms contained within

---

[1] This last text is actually a consecutive group of texts strung together in a conversational format.

[2] *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994).

those texts, such as "bars," "an eye," and "a front."[3] Cpl. Hunter explained that these and other terms in the texts were commonly used by individuals buying or selling illegal drugs. Cpl. Hunter did not read or reference the seventh text message regarding the drug deal gone wrong. At no time during Cpl. Hunter's testimony did petitioner's counsel move the circuit court for a limiting instruction in regard to the text messages.

Petitioner did not testify.

During the instruction phase of petitioner's trial, the circuit court gave a limiting instruction regarding the Rule 404(b) evidence entered at trial. Thereafter, during its deliberations, the jury sought clarification regarding which phone related to the call logs, and which related to the text messages. The circuit court answered the first part of the question by stating that the "call logs" showed calls made from the "Virgin Mobile telephone." As for the text messages, the circuit court merely said that the exhibit showed "text conversations," i.e., the court did not connect the text messages to a phone. The jury foreperson responded, "So it's all the same phone?" The court replied, "Well, the [call logs] are . . . [I] can't really tell you more." Soon thereafter, the jury convicted petitioner of two counts of first degree felony murder.

In a "Final Amended Order of Commitment," the circuit court sentenced petitioner to two consecutive life sentences, with the possibility of parole. Petitioner now appeals his convictions.

On appeal, petitioner first argues that the circuit court erred in admitting the text messages[4] at his trial because they did not tend to prove motive, intent, preparation, plan, knowledge, identity or absence of mistake or accident to commit a crime. The Court reviews this and petitioner's other assignments of error under the following standard:

> The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

*State v. LaRock*, 196 W.Va. 294, 310-11, 470 S.E.2d 613, 629-30 (1996) (internal citations omitted).

---

[3] Cpl. Hunter testified that the term "bars" is another name for Xanax; (2) that the term "an eye" likely meant the actual purchaser of the drugs; and (3) that the term "front" meant a "loan" or delayed payment for the drugs.

[4] In his brief to this Court, petitioner complains about the admission of the "Rule 404(b) evidence" at trial. As noted above, that evidence included both the text messages from the Samsung phone and the call logs from the Virgin Mobile phone. However, given that petitioner did not object to the admission of the call logs at trial, we presume that petitioner refers only to the text messages when he refers to the "Rule 404(b) evidence."

The circuit court did not clearly err when it determined that the State presented sufficient factual support at the *McGinnis* hearing for it to conclude, by a preponderance of the evidence, that petitioner was the "T-man" who sent the text messages to "Big Dog." That factual support included the following: (1) the text messages were sent from a Samsung cell phone found just outside the crime scene; (2) the information "dumped" from other phones found at the scene revealed that "T-man" sent the text messages from the Samsung phone; (3) the Samsung phone was found next to a set of keys belonging to the Honda which petitioner was seen driving early on the day of the shootings and was seen standing beside immediately following the shootings; and (4) the State proffered that three witnesses would testify at trial that petitioner was, in fact, "T-man." Those witnesses included petitioner's accomplice who testified at trial that he had seen petitioner in possession of the Samsung cell phone.

The circuit court also did not abuse its discretion in finding that the text messages were admissible for the purpose of proving petitioner's intent and/or motive for his crimes. Rule 404(b) provides as follows:

> (1) Prohibited uses. – Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) *Permitted uses*; notice in a criminal case. – This evidence may be admissible for another purpose, such as proving *motive*, opportunity, *intent*, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Any party seeking the admission of evidence pursuant to this subsection must:

> > (A) provide reasonable notice of the general nature and the specific and precise purpose for which the evidence is being offered by the party at trial; and

> > (B) do so before trial – or during trial if the court, for good cause, excuses lack of pretrial notice.

(Emphasis added.) Here, petitioner's "intent" and/or "motive" was relevant given that the State was required to prove petitioner's "intent" and/or "motive" to commit robbery in order to gain a conviction against petitioner for first degree felony murder. Further, as the circuit court found, petitioner's text messages were related to his drug dealing "business" and tended to show an overall criminal intent to enhance his illegal "business" by robbing a known drug house. Consequently, given that the evidence was not admitted for a prohibited purpose, we find no error.

Petitioner's second assignment of error is that the circuit court failed to properly determine whether the text message evidence was more probative than prejudicial pursuant to Rule 403 of the Rules of Evidence. Petitioner claims that the circuit court's analysis in this regard was insufficient given that the court said only that, "[the evidence] is prejudicial, but all evidence is prejudicial. Is it so much prejudicial? I don't think so." Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a

5

danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

We find that the circuit court did not abuse its discretion in determining that the text messages were more probative than prejudicial. Specifically, the circuit court found that the text messages were probative because they showed that petitioner had a "business" and that petitioner was not adverse to dealing drugs and committing violence. As for petitioner's complaint that the circuit court's ruling regarding Rule 403 was insufficiently brief, our careful review of the record on appeal reveals that the circuit court balanced the evidence throughout petitioner's and the State's arguments at the *McGinnis* hearing. Such a balancing test is not invalid merely because it was interwoven with the circuit court's Rule 404(b) analysis. Accordingly, we cannot say that the circuit court erred in finding that the evidence was more probative than prejudicial or that the court's comments regarding its Rule 403 decision were insufficiently brief.

Petitioner next argues that the circuit court's inclusion of the text message evidence was error given that the jury specifically asked the circuit court about the "call logs" and text message exhibits during its deliberations and then returned a "guilty" verdict soon thereafter. In essence, petitioner claims that the timing of the jury's question regarding the Rule 404(b) evidence shows that the admission of the text messages was error. We first note that the circuit court's answer to the jury's question—that the "call logs" regarded the "Virgin Mobile" phone, and "[I] can't really tell you more"—provided no additional information or comment about the text messages. Nor does petitioner explain how these abbreviated answers might have impacted the jury in some improper manner. Consequently, this assignment of error is wholly speculative. That said, even if the circuit court had erred in admitting the Rule 404(b) evidence, the error was harmless given that the State provided the jury with ample and overwhelming evidence of petitioner's guilt above and beyond the call logs and text messages. In this regard, we have said,

> Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

Syl. Pt. 2, *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979); *accord State v. Day*, 225 W.Va. 794, 803, 696 S.E.2d 310, 319 (2010). At trial, petitioner's accomplice testified that he and petitioner went to 1932 Foster Avenue to commit a robbery. The evidence also included numerous other witness accounts, as well as significant forensic evidence, that explained petitioner and his accomplice's plan to rob 1932 Foster Avenue. That evidence (1) placed petitioner at the scene of the crime with his accomplice, (2) showed that the Ruger found in the Honda contained petitioner's fingerprint and blood, (3) showed that the Ruger fired the fatal shot into one of the victims, and (4) showed how petitioner fled the scene with his accomplice. Thus, given that this evidence was sufficient to convince the jury of petitioner's guilt beyond a

reasonable doubt without the admission of the contested text messages, any error resulting from the admission of the text messages at trial was harmless.

Petitioner's fourth and final assignment of error is that the circuit court erred in failing to give the jury a limiting instruction after the admission of the Rule 404(b) evidence at trial. This Court has required that "'[a] limiting instruction . . . be given at the time [the Rule 404(b)] evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.' Syl. Pt. 2, *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994)." *State v. Ricketts*, 219 W.Va. 97, 98, 632 S.E.2d 37, 38 (2006). Here, the circuit court did err in failing to give the jury a limiting instruction at the time the Rule 404(b) evidence was admitted into evidence. However, we find that this failure was harmless error for the following reasons: First, when the evidence was admitted during the testimony of Lt. Kingery, he did not read any of the text messages to the jury or discuss their contents in any fashion. Second, following the admission of the text messages, petitioner's counsel did not move the circuit court for a limiting instruction. Third, when Cpl. Hunter testified regarding the first six text messages, petitioner's counsel again failed to move the court for a limiting instruction. Fourth, during the instruction phase of petitioner's trial, the circuit court gave the required Rule 404(b) limiting instruction. Fifth, petitioner does not assert that the jury received a written copy of the text messages prior to its deliberations. Sixth, the jury heard overwhelming evidence of petitioner's guilt. Accordingly, in this case and on these particular facts, we find that the circuit court's failure to give a limiting instruction at the time the text messages were admitted into evidence at trial was harmless error.

Accordingly, for the foregoing reasons, we affirm petitioner's convictions and the August 14, 2014, order that remanded petitioner to the custody of the West Virginia State Penitentiary.

Affirmed.

**ISSUED:** November 20, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

7