**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**June 15, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* S.M.

**No. 18-0223** (Raleigh County 16-JA-001)

**MEMORANDUM DECISION**

Petitioner Mother A.M., by counsel Jennifer Dempsey Meeteer, appeals the Circuit Court of Raleigh County's February 9, 2018, order terminating her parental rights to S.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Lindsey C. Ashley, filed a response on behalf of the child, also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights based solely on the finding that she did not independently maintain housing, terminating her parental rights based on the finding that petitioner's home was unsuitable, and in finding that petitioner was living with a "known abuser" and demonstrated a lack of maturity.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2016, the DHHR filed a child abuse and neglect petition against petitioner and the father. The DHHR alleged that the parents and the child were living in a homeless shelter and that the father was asked to leave due to his violent behavior. The shelter personnel expressed concern that the father was controlling petitioner and not permitting her to speak or act of her own volition. Despite being allowed to stay at the shelter with the child, petitioner left with the father. Thereafter, the parents and child were seen wandering through town begging for food and diapers in cold temperatures. The DHHR also alleged generally that the parents were abusing and/or neglecting the child due to their homelessness, medical neglect, domestic violence, and drug abuse.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

The circuit court held an adjudicatory hearing in March of 2016, wherein petitioner stipulated that she "did not provide consistent shelter and/or failed to provide a permanent home for [the] child[.]" The circuit court accepted petitioner's stipulation and granted her a post-adjudicatory improvement period, which required her to complete the following terms and conditions: (1) establish and maintain suitable housing for a period of six months, (2) maintain stable employment for a period of six months, (3) participate in services to address her poor-decision making issues, (4) undergo a psychological evaluation and follow any recommendations made therein, and (5) participate in counseling sessions with a goal of becoming more self-aware and independent.

In January of 2017, the circuit court held a status hearing regarding petitioner's post-adjudicatory improvement period. A Child Protective Services ("CPS") worker filed a summary with the circuit court, which related that the parents were evicted from their apartment in September of 2016. Petitioner then moved to North Carolina to live with her brother and thereafter failed to participate in services or visitation for several months. In December of 2016, petitioner began cooperating and returned to West Virginia every other weekend for visitation and services. Petitioner requested and was granted an extension to her post-adjudicatory improvement period.

The circuit court held a dispositional hearing in July of 2017. The DHHR presented the testimony of a DHHR worker who testified to petitioner's noncompliance with her improvement period. Specifically, the worker testified that petitioner continued to exercise poor decision-making skills with regard to her relationships. According to the worker, petitioner engaged in two relationships over the course of her improvement period with men who had extensive criminal histories. Petitioner's most recent boyfriend had been arrested twice in the preceding months and petitioner was present at the scene for both arrests. The worker also testified that she had been unable to contact petitioner's brother to verify if petitioner was living in his home and, as such, was unable to facilitate a home study. A service provider also testified that, while petitioner complied with several aspects of her improvement period, the provider was unable to definitively say that the child should be returned to petitioner's care because she had never seen the home environment. Petitioner then testified that she was living with her brother and believed that his home was spacious, clean, and suitable for the child. Petitioner also testified that she had ceased her relationship with her most recent boyfriend. After hearing evidence, the circuit court noted that it would take the matter under advisement and concluded the hearing. Thereafter, in August of 2017, the circuit court ordered that a home study be performed of petitioner's place of residence in North Carolina.

In February of 2018, the circuit court issued its dispositional order terminating petitioner's parental rights. The circuit court noted that it had received the report of the home study, which petitioner failed. The report indicated that, despite her prior testimony to the contrary, petitioner maintained her relationship with her most recent boyfriend, became pregnant with his child, and moved into his home in North Carolina. The report also indicated that the home situation was unstable as the boyfriend's parents also lived in the home, the family had a month-to-month lease, and the home was for sale. Further, both petitioner's boyfriend and his father had extensive criminal histories that included charges for assault on a female, assault inflicting serious injury, and assault with a deadly weapon, among other serious charges. Having

2

viewed the report, the circuit court acknowledged that petitioner complied with a portion of her case plan, but found that she failed to independently maintain suitable housing. Moreover, the circuit court noted that petitioner lied about living with a "known abuser" and demonstrated a lack of maturity through her repeated involvement with men who have criminal histories. As such, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. It is from the February 9, 2018, order that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first assigns as error the circuit court's termination of her parental rights based solely on the ground that she did not maintain independent housing. Specifically, petitioner argues that the circuit court erroneously found that she complied with only a portion of her improvement period, as the evidence demonstrates that she substantially complied with the services offered to her. According to petitioner, failure to complete one case plan goal is insufficient to terminate her parental rights in light of her substantial compliance.

After reviewing the record, we find petitioner's argument to be a mischaracterization of the evidence. Contrary to her argument, her lack of independent housing was only part of the basis for the termination of her parental rights. The final order details other findings of fact made by the circuit court in terminating petitioner's parental rights, including her lack of candor with the circuit court and her inability to make good decisions, as evidenced by her repeated involvement with men that have a history of violent and/or criminal behavior. As such, petitioner's argument that the circuit court terminated her parental rights solely based on her failure to maintain independent housing is inaccurate and as such, she is entitled to no relief in this regard.

---

[2]The parents' parental rights were terminated during the proceedings below. The child was placed in a foster home and the permanency plan for the child is adoption therein.

3

Further, we find that petitioner's argument that she largely complied with her improvement period is not supported by the record. Petitioner is correct that she did comply with some terms and conditions of her improvement period, such as visitation and parenting classes. However, petitioner's assertions that she completed all but one aspect of her post-adjudicatory improvement period are inaccurate. As part of her improvement period, petitioner was ordered to address her poor decision-making issues, participate in counseling sessions for the purpose of becoming self-aware and independent, and maintain suitable housing for six months. The record demonstrates that petitioner failed to sufficiently address each of these terms and conditions.

Testimony established that petitioner continually exhibited patterns of poor decision-making during the proceedings below. While petitioner argues that the circuit court should not have found that she was not "mature," she again mischaracterizes the findings set forth in the final order. Specifically, the circuit court found that petitioner demonstrated a lack of maturity through her repeated involvement with men that have a history of violent and/or criminal behavior. However, the circuit court's clear point was that petitioner repeatedly demonstrated poor decision-making skills. For example, services were initiated shortly after the petition was filed in January of 2016, and petitioner did not meaningfully participate in services until December of 2016. When petitioner began participating in services, she continued to exercise poor decision-making skills despite receiving services to address the same. Petitioner initiated relationships with two men during the underlying proceedings who had criminal histories related to drug abuse and violence, and was present at the scene of one boyfriend's arrests on two separate occasions. Petitioner lied about her intentions to continue the relationship and eventually moved in with her boyfriend, who was on probation. The boyfriend's father also lived in the home and had an extensive criminal history. While petitioner argues that there was insufficient evidence presented regarding their alleged criminal histories, she admits that she resumed her relationship with her boyfriend after testifying that she had no intentions to do so and that he was on probation at the time the home study was performed. Further discussion on the issue of these alleged criminal histories will be more thoroughly developed below.

In addition to her failure to address her poor decision-making, petitioner did not follow through with counseling sessions with a goal of becoming more self-aware and independent. Several times throughout her brief, petitioner suggests that she completed counseling services. However, the record demonstrates, and petitioner admits at least once, that she was unable to attend counseling sessions because they were unavailable on weekends, which is when she returned to West Virginia to participate in her services. Even assuming that petitioner did participate in counseling sessions, it is clear that she did not reach her goal of becoming independent. The record demonstrates that petitioner was completely dependent on others for transportation and housing and failed to comply with services aimed at addressing such issues.

Based on the evidence above, petitioner failed to demonstrate that her parental rights were terminated based solely on her lack of independent housing as she clearly did not comply with several aspects of her improvement period. To the extent petitioner argues that the circuit court should have given more weight to her compliance with the terms of her improvement period, we note that "it is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.'" *In*

4

*the Interest of Carlita B.*, 185 W.Va. 613, 626, 408 S.E.2d 365, 378 (1991) (quoting *W.Va. Dep't of Human Serv. v. Peggy F.*, 184 W.Va. 60, 64, 399 S.E.2d 460, 464 (1990)). Moreover, we have previously held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). Accordingly, we find that petitioner is entitled to no relief in this regard.

Petitioner next assigns as error the circuit court's termination of her parental rights based upon its finding that her home was unsuitable. Specifically, petitioner argues that the circuit court erred in finding that the criminal histories of her boyfriend and his father rendered the home unsuitable for the child. Petitioner also argues that the circuit court erred in failing to consider all of the positive factors noted in the home study report, such as her employment history, lack of criminal history, a positive character reference, and her efforts made throughout the proceedings. However, we find petitioner's argument to be without merit.

To begin, the circuit court did not err in terminating petitioner's rights based upon its finding that the home was unsuitable. Again, as mentioned above, petitioner's failed home study was not the sole basis for terminating her parental rights. To the extent that the circuit court heavily relied on petitioner's failure to maintain adequate housing, we note two things. First, petitioner stipulated to failing to provide adequate housing for the child. As such, all services granted to her were focused on addressing this condition of abuse. Petitioner was aware that she needed to correct her housing situation, but failed to do so. Second, while the circuit court relied on the home study, it was the independent evaluator that initially determined that petitioner's home was unsuitable for the child. In fact, the evaluator acknowledged that petitioner had several positive attributes which were considered, but determined that placement of the child in petitioner's home was not adequate based upon several concerns.

As part of her argument, petitioner raises error with the sufficiency of the evidence regarding the criminal histories of both her boyfriend and his father. According to petitioner, there was insufficient evidence to demonstrate that these men had criminal histories that would be detrimental to the child; their criminal histories should not have been used against her in determining whether her home was unsuitable; and the circuit court erroneously characterized her boyfriend as a "known abuser." While petitioner is correct that several of her boyfriend's criminal charges were dismissed, she herself admits that he was on probation at the time the home study was performed, proving that he did, in fact, have a criminal history. Further, her admission that "most" of the charges were dismissed lends itself to the reasonable conclusion that some were not. Petitioner's boyfriend also has a history of CPS involvement due to his issues with domestic violence. Although the record contains no evidence indicating that he was adjudicated as an abusing parent, he did receive services obligating him to address such issues. Moreover, petitioner's father also lived in the home and was convicted of assault on a female in 2017. While petitioner argues that the circuit court erroneously considered their criminal histories and erred in determining that the same made the home unsuitable for the child, she fails

to cite to any authority supporting her argument that these criminal histories are not proper evidence of the suitability of a home in abuse and neglect proceedings.[3]

Further, the circuit court did not err in relying on the home study report when proper housing was the basis for petitioner's adjudication and she failed to address the same. The petition was filed, in part, due to petitioner's homelessness and subsequent decision to leave a homeless shelter with the child when the father was forced to leave due to his violent actions. Petitioner stipulated to failing to provide consistent shelter or a permanent home for the child. Thereafter, petitioner was transient and eventually evicted from her apartment in October of 2016. While petitioner alleged that she was living in her brother's home, the home study eventually revealed that, at some point, petitioner moved in with her boyfriend and his parents. The home was rented on a month-to-month basis and the owners had listed it for sale, causing the home study evaluator concern that petitioner would be unable to find housing quickly should she need to leave. Given this evidence, petitioner was unable to maintain stable, suitable housing for any extended period of time.

Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected include one in which "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" We have also held that "[t]ermination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. 79, 82, 479 S.E.2d 589, 592 (1996). Further, West Virginia Code § 49-4-605(a)(1) sets forth that the instances wherein the DHHR is required to seek termination of parental rights include situations in which

> a child has been in foster care for fifteen of the most recent twenty-two months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is sixty days after the child is removed from the home[.]

Here, the child was removed from petitioner's care in approximately January of 2016. Petitioner only meaningfully began to participate in services in December of 2016. Petitioner's improvement period continued for several months and the dispositional hearing was ultimately held in July of 2017. Thus, the child had been in foster care well over fifteen months by the time of the dispositional hearing, even before the delay caused by acquiring the home study. Despite having many resources and ample time to address the conditions of abuse, petitioner failed to do

---

[3]Petitioner relies on *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994) for the proposition that evidence of prior crimes, wrongs, or bad acts cannot be admitted to show that a person has a propensity to commit crimes. However, petitioner acknowledges that *McGinnis* pertains to criminal proceedings. Further, this case is distinguishable because, in *McGinnis*, this Court determined that the admission of evidence that the defendant therein committed several other crimes likely led to his conviction due to his character, rather than evidence surrounding the murder with which he was being charged. As such, *McGinnis* is entirely distinguishable from the instant case.

6

so. As such, petitioner's failed home study, coupled with her failure to address other terms and conditions of her improvement period, demonstrate that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. Accordingly, we find that the circuit court's decision to terminate petitioner's parental rights was proper.

In her final assignment of error, petitioner argues that the circuit court erred in finding that she lied about living with a "known abuser" and that she demonstrated a lack of maturity. According to petitioner, the West Virginia Code does not provide that a circuit court may terminate parental rights based upon a lack of maturity. Further, petitioner asserts that she did not testify untruthfully at the dispositional hearing when she stated that she was living with her brother and states that only later did she decide to move in with her boyfriend. We do not agree. Even assuming that petitioner did live with her brother at the time of the dispositional hearing, she testified that she had no intention of resuming her relationship with her boyfriend, but had moved in with him by the time of the home study. She also argues that the circuit court erred in characterizing her boyfriend as a known abuser when there is no evidence that he was adjudicated as an abusing parent or had a violent history and when "the only evidence that he has a criminal history is that he allegedly was on parole. . . ." As discussed above, petitioner admitted that her boyfriend was on probation at the time of the home study, indicating that he had been convicted of a crime. Moreover, the home study demonstrates that her boyfriend had a history of CPS involvement due to allegations of domestic violence. While there is no evidence that he was adjudicated as an abusing parent, the evidence demonstrates that services were initiated to address his problem with domestic violence. Finally, as mentioned above, the circuit court found that petitioner demonstrated a lack of maturity based on her poor decision-making skills in that she repeatedly involved herself with men who had criminal histories. Petitioner's reliance on the "maturity" aspect of the final order's language detracts from the underlying issue: her poor decision-making skills. Petitioner was granted services to address the same and clearly failed to do so. As such, we find that the circuit court did not err in making these findings and petitioner is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 9, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 15, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Allen H. Loughry II, suspended and therefore not participating

7