IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 19-0447

_____

FILED

**October 16, 2020**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

STEVEN TEWALT,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Preston County
The Honorable Steven L. Shaffer
Case No. 18-F-44

AFFIRMED, IN PART; REVERSED, IN PART
_____

Submitted: September 16, 2020
Filed: October 16, 2020

Jeremy B. Cooper, Esq.
Blackwater Law PLLC
Kingwood, West Virginia
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General
Andrea Nease-Proper, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.	"The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syllabus Point 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

2.	"A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syllabus Point 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

3.      "Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility.  Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986).  After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts.  If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b).  If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence.  If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted.  A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence."  Syllabus Point 2, *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994).

4.      "When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose.  It is not sufficient for the prosecution or the trial court

merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction." Syllabus Point 1, *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994).

5. "It is presumed a defendant is protected from undue prejudice if the following requirements are met: (1) the prosecution offered the evidence for a proper purpose; (2) the evidence was relevant; (3) the trial court made an on-the-record determination under Rule 403 of the West Virginia Rules of Evidence that the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and (4) the trial court gave a limiting instruction." Syllabus Point 3, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996).

6. "'Events, declarations and circumstances which are near in time, causally connected with, and illustrative of transactions being investigated are generally considered *res gestae* and admissible at trial.' *State v. Ferguson*, 165 W.Va. 529, 270 S.E.2d 166 (1980), *overruled on other grounds by State v. Kopa*, 173 W. Va. 43, 311 S.E.2d 412 (1983)." Syllabus Point 7, *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014).

7. "The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential

iii

abuse of discretion standard, unless the order violates statutory or constitutional commands." Syllabus Point 1, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997).

WALKER, Justice:

After Petitioner Steven Tewalt strangled his then-wife Krystal Tewalt in November 2017, he was convicted of one count of strangulation under West Virginia Code § 61-2-9d (2016). At trial, the State was permitted to use evidence of Mrs. Tewalt's prior report of a similar strangulation by Mr. Tewalt in September 2017. On appeal, Mr. Tewalt challenges not only the admission of the collateral acts evidence under Rule 404(b) of the West Virginia Rules of Evidence, but also the sufficiency of the evidence to support his conviction, and his sentence, which included a lifetime no-contact protective order. Because we find that there was sufficient evidence for a jury to find Mr. Tewalt guilty of strangulation and that the evidence of his prior conduct was properly admitted, we affirm in part. But because we find that the circuit court lacked the authority to impose a lifetime no-contact protective order, we reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In September 2017, Mr. Tewalt's then-wife, Krystal Tewalt, called the police claiming that Mr. Tewalt grabbed her throat and attempted to "choke her out." An officer with the Preston County Sheriff's Office responded to the call and noted an abrasion on Mrs. Tewalt's neck. The officer photographed the injuries and informed the victim that she could seek an emergency domestic violence protective order or file a complaint against Mr. Tewalt that would result in his prosecution for domestic battery or strangulation. Mrs. Tewalt exercised neither option. Two months later, Mrs. Tewalt went to the police station and asserted that Mr. Tewalt had strangled her a second time on November 18, 2017.

1

On March 6, 2018, a Preston County grand jury indicted Mr. Tewalt on a single count of strangulation under West Virginia Code § 61-2-9d(b)[1] for the November 2017 incident. Prior to trial, the State noticed its intent to introduce collateral acts evidence, including the police report detailing the September 2017 incident and Mrs. Tewalt's testimony regarding the alleged September 2017 strangulation. Mr. Tewalt objected to the introduction of this evidence, claiming that the State failed to satisfy Rule 404(b) of the West Virginia Rules of Evidence and that the September acts were not intrinsic to the alleged offense in November. The circuit court addressed the State's notice of intent twice—once at a pretrial hearing on January 16, 2019, and again on February 5, 2019, the first day of trial—and ultimately granted the State's motion to admit the collateral acts evidence over Mr. Tewalt's objection. The circuit court determined the evidence was

---

[1] West Virginia Code § 61-2-9d provides,

(a) As used in this section:

"Bodily injury" means substantial physical pain, illness or any impairment of physical condition;

"Strangle" means knowingly and willfully restricting another person's air intake or blood flow by the application of pressure on the neck or throat;

[. . .]

(b) Any person who strangles another without that person's consent and thereby causes the other person bodily injury or loss of consciousness is guilty of a felony and, upon conviction thereof, shall be fined not more than $2,500 or imprisoned in a state correctional facility not less than one year or more than five years, or both fined and imprisoned.

2

properly admitted under Rule 404(b) to prove "intent, motive, opportunity, absence of mistake, and lack of accident."

At trial, the State called Mrs. Tewalt to testify. According to her testimony, on November 18, 2017, Mr. Tewalt came up behind her and grabbed her neck. Mrs. Tewalt could not escape his hold and grabbed his wrists in an attempt to disengage his hands from her throat. While gripping her neck, Mr. Tewalt repeatedly slammed her downward to the pantry floor, causing her body to come into contact with shelves and a table. Once on the floor, Mr. Tewalt continued to apply pressure and Mrs. Tewalt blacked out. She awoke on her back, with Mr. Tewalt sitting on top of her, approximately six to seven feet away from where she had been standing. Mr. Tewalt then stood up and Mrs. Tewalt attempted to leave the home, but Mr. Tewalt intervened and told her she should stay in their bedroom. In the days following the incident, Mrs. Tewalt experienced pain in her throat, difficulty swallowing, and hoarseness when speaking. She also had several knots on her head, a blood blister on her eye, and bruises on various parts of her body. She further testified that she visited a doctor the following week and was unable to fully open her mouth.[2] After the incident, Mrs. Tewalt petitioned the Magistrate Court of Preston County for a temporary domestic violence protective order, and a magistrate completed the forms, but

---

[2] Medical records were not admitted at trial. Also, on cross-examination, defense counsel elicited testimony from Mrs. Tewalt that she did not know that the strangulation caused her to lose consciousness, nor did she inform her doctor that she had suffered a strangulation injury as "within six days it had pretty much healed."

3

there is nothing in the record to indicate that this order was made final or that it was ever extended. Mrs. Tewalt also testified about the strangulation incident in September 2017.

At the close of Mrs. Tewalt's testimony, the circuit court instructed the jury that the evidence regarding the September 2017 strangulation was offered to prove "motive, opportunity, intent, absence of mistake, and lack of accident," and not to prove that Mr. Tewalt strangled the victim on November 18, 2017. The State then called the officer who handled both the September and November 2017 incidents to testify. Through his testimony, the State introduced eleven exhibits, all photographs of Mrs. Tewalt's injuries from the September and November incidents.[3] At the close of the State's evidence, Mr. Tewalt moved for a judgment of acquittal, which the circuit court denied.

During Mr. Tewalt's case-in-chief, he presented testimony of three witnesses who were living in or visiting the home during the relevant time period. All three witnesses testified that they did not witness Mr. Tewalt strangling Mrs. Tewalt. Mr. Tewalt did not testify. At the close of his case-in-chief, Mr. Tewalt again moved for a judgment of acquittal, which the circuit court denied. The circuit court then instructed the jury on the elements of strangulation and sent the jury to deliberate. During deliberation, the jury sent two questions to the court: (1) could the jury consider a charge of battery; and (2) could the court define "substantial" as used in the strangulation statute. In response to the first

---

[3] These photos depicted the bruising to Mrs. Tewalt's face, the blood blister on her eye, and the injuries to her neck, foot, and ear.

question, the court answered, "No, you may not consider any other criminal charge beyond the criminal charge of 'Strangulation' contained in the indictment." As to the second, the court instructed the jury that "[t]o determine what is 'substantial' for the element of 'bodily injury' in the Strangulation statute, you are to reach conclusions which reason and common sense lead you to draw from the facts established by the evidence in this case." After deliberating further, the jury then indicated that it was deadlocked and the court delivered an *Allen*[4] charge. The jury returned a verdict of guilty on the single count of strangulation.

Mr. Tewalt filed several post-trial motions. First, he moved for a new trial based on the admission of the collateral acts evidence. He argued there was insufficient evidence to show he tried to strangle his wife during the September 2017 incident and that the circuit court erred by failing to instruct the jury on the specific purpose of the collateral acts evidence, instead giving a litany of possible uses under Rule 404(b). Second, Mr. Tewalt moved for an acquittal on the basis of insufficient evidence. Third, he moved for arrest of judgment regarding the court's failure to define the term "substantial" as used in the strangulation statute. Finally, he moved for a mistrial, arguing that the jury doubted his guilt as they asked if they could find him guilty of a lesser charge. The circuit court denied

---

[4] *See State v. Waldron*, 218 W. Va. 450, 459 n.11, 624 S.E.2d 887, 896 n.11 (2005) ("The *Allen* charge, often called the 'dynamite charge,' is a supplemental instruction given to encourage deadlocked juries to reach agreement." Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure*, Vol. II, page 257 (2nd Ed.1993). The name for this particular instruction originated from the case of *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).").

each of these motions without analysis in its Order Following Post Trial Motion Hearing on March 19, 2019.

On April 19, 2019, Mr. Tewalt appeared for sentencing. The circuit court stated that it intended to (1) sentence Mr. Tewalt to one to five years in prison and (2) impose a lifetime protective order so that Mr. Tewalt would "never have any contact with the victim." Mr. Tewalt's counsel asked the circuit court to identify the authority upon which it would enter the lifetime protective order, but the circuit court did not do so. A few days later, the circuit court memorialized its intentions in its April 26, 2019 Sentencing Order. With regard to the lifetime protective order, the court stated that Mr. Tewalt "shall have no contact, direct or indirect, with [the victim] under further Order of this Court, and shall not in any case be dissolved without reasonable notice to the parties. . . ." Mr. Tewalt now appeals both the Order Following Post Trial Motion Hearing and the Sentencing Order to this Court.

## II. STANDARD OF REVIEW

Different standards of review apply to each of Mr. Tewalt's assignments of error, so we set out the relevant standards of review as part of the analysis of each below.

## III. ANALYSIS

Mr. Tewalt asserts several assignments of error before this Court. First, he argues the circuit court erred in denying his motion for acquittal based on insufficiency of

6

the evidence.  Second, he argues the circuit court erred in admitting certain collateral acts evidence under Rule 404(b) of the West Virginia Rules of Evidence.  Finally, he argues the circuit court erred in imposing a lifetime protective order in Mrs. Tewalt's favor at sentencing.  We address these arguments in turn.[5]

### A.    *Insufficiency of the Evidence*

When this Court considers sufficiency of the evidence challenges on appeal, the standard of review includes reviewing the evidence in the light most favorable to the prosecution:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt.  Thus, the relevant inquiry is whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.
>
> [. . .]

---

[5] Mr. Tewalt also argues that the strangulation statute, W. Va. Code § 61-2-9d, is unconstitutionally vague in that it fails to define what is meant by "substantial" pain for purposes of the element of bodily injury.  In the same vein, Mr. Tewalt argues the circuit court erred in failing to grant his motion for mistrial on the basis that the jury was confused by this vagueness, as evidenced by its submission of a question to the court asking that the term be defined.  The court answered the jury's question by stating, "[t]o determine what is 'substantial' for the element of 'bodily injury' in the Strangulation statute, you are to reach conclusions which reason and common sense lead you to draw from the facts established by the evidence in this case."  We conclude that Mr. Tewalt waived these arguments in that he failed to preserve the vagueness argument for appeal because he did not object to the court's answer to the jury's inquiry below.  So, we do not address these arguments on appeal.

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.[6]

Mr. Tewalt contends the State failed to prove an essential element of the crime of strangulation, under West Virginia Code § 61-2-9d, in that it did not prove beyond a reasonable doubt that the victim suffered a "restriction of air intake or blood flow" which caused her loss of consciousness, substantial physical pain, illness, or impairment of physical condition. Below, Mrs. Tewalt testified that she lost consciousness during the November strangulation incident while Mr. Tewalt was applying pressure to her throat with his hands. Mr. Tewalt contends the State failed to establish a causal link between his choking Mrs. Tewalt and her loss of consciousness during the attack, and her pain and illness after the attack. More specifically, Mr. Tewalt contends there are other explanations for Mrs. Tewalt's loss of consciousness and injuries in that, during the strangulation incident, her body struck shelves and a table in the room, and that the striking—as opposed

---

[6] Syl. Pts. 1 and 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995) (footnote added).

to the restriction of air intake or blood flow— could have caused the loss of consciousness and injuries.

But Mr. Tewalt has not met the heavy burden facing a petitioner taking on a sufficiency of the evidence challenge in a criminal matter. The evidence introduced below, in the form of Mrs. Tewalt's detailed testimony, established that Mr. Tewalt was applying pressure to her throat with his hands and "choking the air out of her," that she was unable to dislodge his hands from her neck, that Mr. Tewalt repeatedly slammed her body toward the floor while still applying pressure to her throat, and that she lost consciousness during the incident. Mrs. Tewalt also testified that she regained consciousness on her back several feet from where the incident began and that Mr. Tewalt was sitting on her chest. Finally, Mrs. Tewalt testified that she suffered from throat pain, an inability to swallow, and hoarseness when speaking after the incident. The State also introduced photographs of Mrs. Tewalt's injuries taken by a Preston County sheriff's deputy.

Mr. Tewalt introduced evidence from other individuals in the home at the time of the incident who attempted to explain away Mrs. Tewalt's injuries, including that bruising on her neck was caused by her having lifted a bale of hay onto her shoulder in her efforts to feed the family's livestock. Mr. Tewalt also decries the State's failure to submit medical evidence to the jury and highlights that Mrs. Tewalt stated during cross-examination that she did not have a doctor examine her strangulation injuries. Mr. Tewalt concludes his arguments to this Court by noting the myriad other explanations for the

9

victim's injuries, including that her hoarseness resulted from shouting and that neck pain could result from contact short of strangulation. While we do not doubt that such explanations are theoretically plausible, we can also easily conclude that the jury had before it sufficient evidence to deduce that the victim's loss of consciousness and injuries resulted from Mr. Tewalt's having applied pressure to her throat such that her air intake or blood flow were restricted.

Our standard of review asks whether a rational trier of fact could conclude, based on the above evidence, that Mr. Tewalt knowingly and willfully restricted Mrs. Tewalt's air intake or blood flow by applying pressure to her neck or throat and that such restriction caused her to lose consciousness or suffer bodily injury. Reviewing the evidence in the light most favorable to the prosecution, we have little doubt that a rational trier of fact could conclude that Mr. Tewalt's choking the victim caused her loss of consciousness; moreover, a rational juror could conclude that Mrs. Tewalt's subsequent pain, as well as her difficulty speaking and swallowing, resulted from the choking rather than from some other source. Therefore, we affirm the circuit court's denial of Mr. Tewalt's motion for acquittal based on insufficiency of the evidence.

### B.    *Collateral Acts Evidence*

Mr. Tewalt next contends the circuit court erred in admitting evidence of the September 2017 incident as collateral acts evidence under Rule 404(b) of the West Virginia Rules of Evidence because it did not specify a particular purpose for its admission. The

State counters that the evidence was properly admitted under Rule 404(b), and even if it were not, the evidence would still be permitted as intrinsic evidence. In considering evidentiary admissions under Rule 404(b), we employ the following three-step standard of review:

> First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.[7]

At the heart of Mr. Tewalt's challenge on this point is our holding in Syllabus Point 2 of *State v. McGinnis*,[8] which sets out a procedure for the trial court to follow prior to admitting Rule 404(b) evidence, including an in camera hearing, a relevancy finding, and an instruction to the jury:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence

---

[7] *State v. LaRock*, 196 W. Va. 294, 310-11, 470 S.E.2d 613, 629-30 (1996) (footnote added).

[8] 193 W. Va. 147, 455 S.E.2d 516 (1994).

11

should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Mr. Tewalt first argues the circuit court's in camera hearing failed to elicit the required information for the court to make a determination that a preponderance of the evidence showed that the September 2017 incident truly occurred. Second, he contends that the evidence was irrelevant under Rules 401 and 402. Third, he contends that the evidence was inadmissible as the risk of prejudice outweighed its probative value under Rule 403. And finally, he argues that the circuit court did not appropriately instruct the jury as required by Syllabus Point 1 of *State v. McGinnis*,[9] which states:

> When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

---

[9] *Id.*

Having reviewed the record, it is abundantly clear that the circuit court conducted a proper in camera hearing to determine the admissibility of the State's proffered Rule 404(b) evidence. At this hearing, the trial court had before it the proffered testimony of the victim and the investigating officer, as well as the police report detailing the incident and photographs of the victim's injuries at that time. While the bulk of that hearing was devoted to addressing audio recordings which were subsequently excluded under the spousal communications privilege, the parties also openly discussed the admission of the evidence at issue here regarding the September 2017 incident. As such, we cannot agree with Mr. Tewalt that the trial court lacked sufficient information to determine by a preponderance of the evidence that the September 2017 incident occurred.

Second, turning to the question of relevancy, we recognize that, by virtue of this evidence being introduced under Rule 404(b), it must be relevant to one of the permitted purposes under subsection (b)(2). As we discuss further below, the State proffered the evidence of the September 2017 incident to illustrate motive, intent, opportunity, lack of accident, and absence of mistake. We have also recognized that "[u]nder Rule 401, evidence having *any* probative value whatsoever can satisfy the relevancy definition. Obviously, this is a liberal standard favoring a broad policy of admissibility."[10] Under a liberal construction, we have no trouble determining this

---

[10] *McDougal v. McCammon*, 193 W. Va. 229, 236, 455 S.E.2d 788, 795 (1995) (emphasis in original).

13

evidence has some probative value and that it could be used to demonstrate that Mr. Tewalt was capable of forming the intent to strangle the victim and willfully follow through with that conduct. That evidence would similarly serve to counter any argument that Mr. Tewalt accidentally or mistakenly strangled the victim in November. Because it is clear the collateral acts evidence was introduced for a permitted purpose, and the evidence was relevant to illustrate that purpose, we conclude that the circuit court did not err in determining that the collateral acts evidence was relevant.

Third, we have directly spoken on the Rule 403 balancing of probative value and the potential for unfair prejudice and held

> [i]t is presumed a defendant is protected from undue prejudice if the following requirements are met: (1) the prosecution offered the evidence for a proper purpose; (2) the evidence was relevant; (3) the trial court made an on-the-record determination under Rule 403 of the West Virginia Rules of Evidence that the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and (4) the trial court gave a limiting instruction.[11]

Each of these elements is clearly satisfied here. The prosecution offered the evidence for clearly specified purposes: motive, intent, opportunity, absence of mistake, and lack of accident. The evidence, as discussed above, was relevant. The trial court conducted a hearing to determine if the probative value of the evidence was substantially outweighed by its potential for unfair prejudice when it conducted the above-described hearing and

---

[11] Syl. Pt. 3, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996) (footnote added).

14

subsequently permitted the introduction of this evidence. Finally, the court gave a limiting instruction twice: once when the evidence was first presented to the jury, and again before the jury was sent to deliberate. So, we find there was a presumption the evidence's probative value was not outweighed by its potential for unfair prejudice.

Finally, we turn to Mr. Tewalt's contention that the State and the circuit court violated Syllabus Point 1 of *McGinnis* in that they listed a "litany of possible uses" for the proffered Rule 404(b) evidence. Mr. Tewalt's argument cannot sustain a facial challenge. Rule 404(b)(2) lists *nine* permitted uses: motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, and lack of accident. As noted above, the prosecution offered evidence of the September 2017 strangulation incident to prove, and the circuit court instructed the jury on, the following *five* possible uses: intent, motive, opportunity, absence of mistake, and lack of accident. As such, neither the prosecution nor the circuit court listed the "litany of possible uses" for this evidence as prohibited by our holding in *McGinnis*. We have no doubt that it is possible to admit evidence under Rule 404(b) for more than one purpose so long as the prosecution and the circuit court identify those specific purposes, as was done here. That said, we caution practitioners and the courts to be careful in their citations to the Rule 404(b) permitted uses and ensure that the evidence supports citation to the specific use or uses.

Although we are satisfied the trial court did not err in permitting the State to introduce the collateral acts evidence relating to the September 2017 incident, we are also

15

cognizant that this evidence could have been admitted as intrinsic evidence and bypassed the Rule 404(b) requirements. As we held in Syllabus Point 7 of *State v. McKinley*,[12] "[e]vents, declarations and circumstances which are near in time, causally connected with, and illustrative of transactions being investigated are generally considered *res gestae* and admissible at trial." And, we have long permitted trial courts to admit evidence of past bad acts where the acts are part of a single criminal episode, where the previous acts constitute necessary preliminaries to the charged act, or where the previous acts are inextricably intertwined with the charged act.[13] In *State v. Dennis*, a situation similar to this case, we upheld the trial court's decision to allow the admission of intrinsic evidence in the form of prior acts of domestic violence. We noted that those prior acts were necessary to "'complete the story of the crimes on trial' or otherwise provide context to the crimes charged."[14] Much like the prior domestic violence incidents in *Dennis*, the September 2017 strangulation incident here completes the story and provides context for the November 2017 strangulation incident. As such, we conclude that, even if this evidence had been inadmissible under Rule 404(b), it would have been admissible as intrinsic evidence under *Dennis*.

---

[12] 234 W. Va. 143, 764 S.E.2d 303 (2014).

[13] *State v. Dennis*, 216 W. Va. 331, 351, 607 S.E.2d 437, 457 (2004).

[14] *Id*. (quoting *LaRock*, 196 W. Va. at 312 n.29, 470 S.E.2d at 631 n.29).

For the foregoing reasons, we affirm the trial court's order as far as it denied Mr. Tewalt's motion for a new trial on the basis that the court improperly admitted the collateral acts evidence.

## C.     *Lifetime Protective Order*

Finally, Mr. Tewalt argues the circuit court erred in imposing a lifetime protective order in Mrs. Tewalt's favor at the sentencing hearing. Essentially, the lifetime protective order provided that Mr. Tewalt was prohibited from having any contact with the victim for life. Mr. Tewalt objected to the imposition of that protective order below on the basis that the circuit court identified no authority under which it could sustain such an order. We have held that we "review[] sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands."[15] As we are unable to identify any authority permitting the circuit court to impose this lifetime protective order, we agree with Mr. Tewalt that the circuit court committed clear error in this regard.

The West Virginia Code provides for different types of protective orders, including what may be considered permanent protective orders, in specific contexts. First, under West Virginia Code § 48-5-608(a) (2005), a circuit court may enter a lifetime

---

[15] Syl. Pt. 1, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997).

protective order in conjunction with a divorce. Second, under West Virginia Code § 48-27-505 (2010), a court may enter a domestic violence protective order which has an initial duration of 180 days, with a possible extension of 90 days. Upon violation of the initial order, the court may enter a second extension lasting up to one year.[16] If there is a second violation of the order, the court may enter a third and final extension in a duration to be determined by the court.[17]

Here, § 48-5-608(a) is clearly inapplicable because this is not a divorce proceeding. On the other hand, § 48-27-505 is technically applicable in that the trial court could have entered an initial 180-day order with a possible 90-day extension.[18] But, in the absence of evidence that Mr. Tewalt violated the initial order, the court could not have extended it for an additional year, let alone indefinitely. There was no evidence presented below, nor is there anything in the record, to illustrate that Mr. Tewalt ever violated a domestic violence protective order imposed under West Virginia Code § 48-27-505. We are further unable to identify any authority under which the trial court could have imposed a lifetime protective order. As such, we conclude the circuit court clearly erred and we reverse its sentencing order insofar as it imposes a lifetime protective order.

---

[16] W. Va. Code § 48-27-505(b) (2010).

[17] W. Va. Code § 48-27-505(c) (2010).

[18] As noted above, there is some dispute as to whether the magistrate finalized an initial 180-day order after the November 2017 incident.

18

## IV. CONCLUSION

For the above reasons, we affirm the Circuit Court of Preston County's March 19, 2019 Order Following Post Trial Motion Hearing. We reverse, in part, the Circuit Court of Preston County's April 27, 2019 Sentencing Order, only insofar as it imposes a lifetime protective order in favor of Mrs. Tewalt.

Affirmed, in part, and reversed, in part.

19